26 KENTUCKY REPORTS. [Vol. 110

Union Cent. Life Ins. Co. v. Hughes' Admr.

---

CASE 5—ACTION ON POLICY OF LIFE INSURANCE—FEB. 19.

## Union Cent. Life Ins. Co. v. Hughes' Admr.

APPEAL FROM BELL CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

LIFE INSURANCE—INTEMPERANCE IN USE OF INTOXICANTS—DISCONTINUANCE OF USE BEFORE DEATH—KEEPING SALOON.

Held: 1. Where a policy of life insurance provided that if insured should become intemperate in the use of intoxicating liquors the company might, at its option, cancel the policy and then provided that if insured should die during or by reason of the violation of that condition the reserve value only should be paid, the right of recovery was not limited to the reserve value where insured, who died of consumption, was not intemperate in the

use of intoxicants at the time of his death, though he had been so up to the time he became an invalid, six months before he died.

2. Defendant can not complain of an instruction given by the court which was taken substantially from instructions which it asked.

3. Under a policy providing that insured should not, without the consent of the company, keep a liquor saloon, and that if he should die during or by reason of the violation of that condition only the reserve value of the policy should be paid, the fact that insured owned a half interest in a saloon at the time of his death does not limit the recovery to the reserve value of the policy, as he did not then "keep" the saloon, though he had done so up to the time he became an invalid.

ROBERT RAMSEY, ATTORNEY FOR APPELLANT.

### POINTS AND CITATIONS.

1. The legatee of the insured was not a proper party. The defendant had no contract with her. The policy was not assigned to her. The company could not pay her without subjecting itself to a liability to the creditors of the insured. The defendant was liable under this policy, if at all, to the estate of the insured.

2. The first charge given was erroneous. The extent of the obligation assumed by the defendant is measured by the language of the policy itself. That language can not be enlarged by judicial construction. The policy provided that if the insured should become what might fairly be called an intemperate man, and should die an intemperate man, the reserve value only should be paid. In order to preclude the danger of such construction as the court gave in this charge, the policy also provided that the reserve only should be paid in case the insured should die by reason of intemperance. There are two disjunctive clauses, each of which is to be given its full legal effect in the contract. The court ignored the first clause and charged the jury that only the second clause was effective, by saying that the full amount of the policy was due unless the death was "caused" by the excessive use of intoxicating liquor.

3. The second charge given was erroneous. The court properly instructed the jury that if Hughes died while keeping a liquor saloon, the plaintiff could not recover the face of the policy. The error in the charge was in what follows, where the court said that if the defendant company or "its agents" had notice of the fact and continued to accept premiums, it would be deemed to have consented. As we have seen, there was no evidence tending to show that the defendant had actual knowledge. Was

**28** KENTUCKY REPORTS. [Vol. 110

Union Cent. Life Ins. Co. v. Hughes' Admr.

the knowledge of the agent, Drake, constructively the knowledge of the defendant? Willis v. Vallette, 4 Met., 186.

A. K. COOK, FOR APPELLANT.

### POINTS AND AUTHORITIES.

1. Where the insured stipulates .that if he shall become intemperate in the use of intoxicating liquors, and shall die while continuing in such intemperate use, only the reserve value of the policy shall be paid, it is .not necessary for the insurer to prove that the death of the insured was caused by the intemperate use of intoxicating liquors; but if the insurer prove that the insured became intemperate in the use of such liquors and that such intemperate. use continued up to the fatal illness of the insured, only the reserve value is payable, and the jury should have been so instructed in the case at bar. 13 Am. & Eng. Ency. of Law, 639; Southcombe v. Merriman, Car. & M., 286; May on Insurance, sec. 290; U. C. Life Ins. Co. v. Lea, 20 Ky. Law Rep., 839.

2. The receipt of premiums by the insurer, with knowledge that .the insured was then engaged in the prohibited occupation of saloon-keeping, is not .a waiver of the prohibitory stipulation, as no ·implication arises from such receipt that the insurer consented that .the insured might continue in such prohibited business; and more especially is this true in .the case at bar, where the insured stipulated that if he should die while engaged in such prohibited occupation only the reserve value of the policy should be payable, and in this case the jury should have been instructed to find for plaitniff the reserve value only. Wright's Admr. v. N. M. L. Ins. Co., 11 Ky. Law Rep., 519; Western Assurance Co. v. Rector, 94 Ky. Law Rep., 3; Modern Woodmen's Ac. Assn. v. Shryock, 39 L. R. A., 826; Thurman v. Iowa Mut. Assn., 37 L. R. A., 587.

T. G. ANDERSON, ATTORNEY FOR APPELLEE.

The contentions of appellant are two in number as follows:

First, That Hughes, the insured, kept a liquor saloon without its written consent and died the keeper of such saloon, to which appellee says: "You knew it, and continued to accept premiums," and, further, that "at the time of the death of insured he was not the *keeper*, but only the one-half *owner* of the saloon."

Second, That insured died during, and by reason of, the intemperate use of intoxicating liquors. Appellee denies this flatly.

Our contention is:

1. That appellant had notice that the insured was in the

saloon business, and continued, thereafter, to accept premiums from him and this is a waiver of that condition of the policy.

2. Insured did not die the keeper of a saloon in the meaning of the policy.

3. Insured did not die "during or by reason of the use of intoxicating liquors."

### AUTHORITIES CITED.

Phoenix Ins. Co. v. Speers & Thomas, 87 Ky., 285; Baer v. Phoenix Ins. Co., 4 Bush, 242; Am. Ac. Ins. Co. v. Reigart, 94 Ky., 547; May on Ins. (3d ed.), sec. 175; Van Bories v. U. S. Life Ins. Co., 8 Bush, 133; Germania Ins. Co., of New York v. Reidwig, 80 Ky., 236; Newman v. Covenant Asso. Law Rep. An., vol. 1, 659; Wright's Admr. v. Northwestern Life Ins. Co., 91 Ky., 208, particularly page 213; Hartford Life Ins. Co. v. Hayden, Admr., 90 Ky., 39; McGurk, Admr., v. The Met. Life Ins. Co., L. R. A., vol. 1, p. 363.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

Appellant on September 5, 1890, issued to John S. Hughes a policy by which, in consideration of ten annual payments of $46.02 each, it insured his life in the sum of $1,000, the loss to be paid to his personal representative at his death. Hughes made seven annual payments on the policy, and died on June 23, 1897. Appellee, as his administrator, filed this suit on the policy; and appellant resisted a recovery of the full amount, insisting that only the reserve value of the policy, which amounted to $151.84, could be recovered. The policy was subject to these conditions: "(2) The insured shall not, without the written consent of the company, keep a liquor saloon, or personally engage in blasting, mining, or submarine operations, or serve in any capacity on any vessel, boat, or railway train, or in the production of highly-inflammable or explosive substances, or enter any military or naval service whatsoever, the militia excepted. (3) In case the person whose life is insured shall become intemperate in the use

of intoxicating liquors or opium, the company may, at its option, cancel this policy; and its reserve value, calculated by the American six per cent. table of mortality, less any outstanding indebtedness against the policy, shall, in case of such cancellation, be paid to the legal owner of the policy. (4) In case the insured shall die in consequence of the violation of law, or shall become a drunkard, or have delirium tremens, this policy shall become null and void. (5) Should the insured die during or by reason of the violation of any of the conditions and agreements specified above in paragraphs 2, 3, and 4, then the reserve value only of this policy at the time of the death, calculated by the American six per cent. table of mortality, shall be paid." Appellant alleged that the insured, without its written consent, kept a liquor saloon up to and at the time of his death; that he became intemperate in the use of intoxicating liquors, and died during the intemperate use thereof, and by reason of such use. It offered to pay the reserve value, $151.84, and claimed that no more could be recovered. The proof showed that the insured, Hughes, and Joshua Burdette owned, as partners, a saloon in Middlesboro, which they had run from some time in the year 1891; that the appellant's State agent, as well as its local agent, knew this fact, and that the payment of the annual premiums was accepted with this knowledge; that the insured drank a good deal (as to the amount of his drinking the proof was conflicting); that Burdette ran the saloon, but the insured was about it most of his time, opened it in the morning, and attended to it when for any reason Burdette was out, until about December, 1896, when his health failed; that he had consumption, and was confined to his room from about December, 1896, until he died, the following June; and that he died of consumption, and was

unable for several months before his death to drink as much whisky as the physicians prescribed for him.   On this evidence the court instructed the jury as follows:   "(1) The court instructs the jury that the law is for the plaintiff, and the jury will find for the plaintiff in the sum of $1,000, unless the jury believe from the evidence that the death of the plaintiff's intestate, J. H. Hughes, was caused by the excessive use of intoxicating liquors.   In that event the verdict of the jury will be for the defendant.   (2)  The court further instructs the jury that if deceased, John Hughes, died while he was the keeper of a liquor saloon, the law is for the defendant, and they will so find, unless they further believe from the evidence that the defendant insurance company or its agents had notice that said Hughes was in the liquor business, and after said notice continued to accept and receive the premiums from said Hughes.   If they so believe, the law is for the plaintiff, and they will so find."

It is insisted for appellant that the court should also have instructed the jury that if Hughes became intemperate in the use of intoxicating liquors, and continued in the intemperate use of such liquors, up to the time of his last illness, they should only find for the plaintiff $151.84.   An instruction to this effect was asked by appellant on the trial, and was properly refused; for it was not a condition in the policy that only the reserve fund could be recovered if the insured continued in the intemperate use of intoxicating liquor up to the time of his last illness.   The condition of the policy is, should the insured die during the violation of the clause referred to.   The insured having been an invalid for six months before he died, and his habits during that time good as to the use of intoxicating liquor, it can not be said that he died during a violation of

the stipulation of the policy against the intemperate use
of intoxicating liquors.

It is also insisted for appellant that the court erred in
instructing the jury that there might be recovery of the full
amount of the policy, although the insured was at his
death the keeper of a liquor saloon, if appellant had notice
of this fact, and with such notice continued to accept the
premiums from him.   But the second instruction given by
the court is taken substantially from the third and fourth
instructions asked by appellant, and it can not complain
of an instruction which it asked itself.   The third and
fourth instructions asked by appellant on the trial both
conceded that it could not make this defense if it accepted
the premiums with knowledge of the facts.   They only
differ from the one given by the court in qualifying the
notice necessary.   Where a principle of law is conceded
by both parties on the trial, in the instructions they
asked, this court will not ordinarily reverse; and, on
the facts of this case, we are of opinion there should not be
a reversal here.   The insured was not at the time of his
death the keeper of a liquor saloon within the meaning of
the contract. The condition, "should the insure die during"
the violation of the preceding clauses, refers only to the
state of things existing at his death.   For six months before
his death the insured had been an invalid.   He had fol-
lowed no occupation, and, while he was the owner of a half
interest in the saloon, he did not 'keep a liquor saloon"
during that time.   If up to December, 1896, he had served
as brakeman on a railway, or as a deck hand on a steam-
boat, and had then become an invalid, and after that time
had not engaged in the service any more, it could not be
maintained that his death under such circumstances would
have come within the meaning of the contract.   The pur-

pose of the stipulation was to protect the company against death in callings which are especially perilous; but so long a time had elapsed in this case since the deceased had followed the calling, by reason of an incurable disease rendering him a hopeless invalid, that we do not think the case falls within the letter or spirit of the contract. He died of consumption. He owned at his death a half interest in the saloon, but he was not the keeper of the saloon at that time, and had not been for six months. The inhibition of the contract refers only to the personal occupation of the deceased at the time of his death, not to his owning a saloon, or an interest in it. Stipulations of this character in policies of insurance are always strictly construed against the insurer. Judgment affirmed.