CASE 86—ACTION TO RECOVER ALLEGED BALANCE DUE ON BONDS.—
FEB. 19.

# First National Bank v. Germania Safety Vault & Trust Co.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

BANKS AND BANKING—PLEDGE TO SECURE SPECIFIC DEBT—EXTENT OF
LIEN—INSTRUCTIONS TO JURY—WAIVER OF ERROR.

Held: 1. Where bonds were pledged to a bank to secure a specific debt, the bank had no lien except for that debt.
2. Defendant can not complain that instructions given on plaintiff's motion assumed the existence of a disputed fact, where the instructions asked by him contained the same error.
3. There can be no reversal for an error in admitting incompetent testimony to establish a fact the existence of which the instructions asked by both parties assumed.

A. E. WILLSON, D. W. SANDERS AND W. B. THOMAS, FOR AP-
PELLANT.

This is an appeal from a judgment of the Jefferson circuit
court, Law and Equity Division, rendered against appellant,
awarding appellee $3,474.98 damages, for an alleged conversion of
five $1,000 L. & J. Bridge Co. bonds, claimed to have belong-
ed to the estate of Jacob Kreiger, Sr., and which appellant
claims were pledged to it *generally* to secure a balance due to
it from the Masonic Savings Bank, and not *specially* to secure
a $3,000 check of Jacob Krieger, Sr., as claimed by appellee.

### POINTS AND AUTHORITIES RELIED ON.

1. The testimony of Spindle, president of the Trust Company,
assignee of Krieger, to prove that Krieger owned the bonds, for
the alleged conversion of which the judgment was given, that
the bonds were not mentioned in the books showing the assets
of the Masonic Bank, and were in Trust Company's list of as-
sets of Jacob Krieger, unsupported by any claim of Spindle of
any personal knowledge or any knowledge but his conclusion
from his examination of the books and papers of the bank and
of Kreiger, or by offering in evidence, the books or the entries
themselves or copies of them, or by the testimony of the per-
son or persons who made entries in any of those accounts that
they were correctly made, there being no claim that the persons
who kept such accounts were dead or could not be produced,
was clearly incompetent much less is Spindle's testimony to
the negative fact that the bonds were not listed in the Masonic
Bank's property, competent.

Lawhorn v. Carter, 11 Bush, 7; Brannin & Smith v. Foree, 12
B. Mon., 508-9; Poor v. Robinson, 13 Bush, 291.; Waldon v. Cit-
izens' Saving Bank, 19 Ky. Law Rep., 1410; Travers & Co. v.
Wood, 20 Ky. Law Rep., 1819; Bank of Tennessee v. Smith, 9
B. Mon., 611; Callahan v. Trimble, 10 Ky. Law Rep., 36; Free-
man v. Deer, 14 Ky. Law Rep., 813; Groschel v. Knoll, 10 Ky.
Law Rep., 314; Stucky v. Sheckler, 12 Ky. Law Rep., 985..

2. The allegation that the bonds were specially pledged for
the $3,000 check was denied. There was no proof, but Spin-
dle knew nothing personally, and his testimony that he found
in examining Krieger's assets, that the bonds had been pledged
to the First National Bank, and the transaction did not appear
in the books of the Masonic Savings Bank, and that the ap-
pellee Trust Company's asset book of Krieger estate, showed that
the five bonds were pledged to secure this particular check of
$3,000 (Tr. p. 26), all admitted over appellant's objection, were

not competent. This proposition is supported by the authorities cited under No. 1.

3. The instruction complained of assumed the disputed fact and failed to leave the disputed fact to the decision of the jury, that Krieger's estate owned the bonds, which was denied, and supported by no competent evidence, and such assumption is contrary to the well established rule of evidence. Stout v. Cloud, 5 Littell, 207; Blair v. Pollock, Littell's Select Cas., 208; Lightburn v. Cooper, 1 Dana, 273; Sullivan v. Enders, 3 Dana, 66; More v. Willcox, 4 Dana, 533; Adams v. Tiernan, 5 Dana, 394; Stith v. Jones, 4 B. M., 375; Kendall v. Hughes, 7 B. M., 371.

4. The third instruction erred in fixing the measure of damages as the difference between the balance due on the $3,000 check and the price which the appellee had to pay Armstrong, who bought from the First National Bank the five bonds, $6,450—because the appellee had the chance to get the bonds by paying $6,050. for them to the First National Bank; and because the bank could not be held liable to Krieger's assignee for the special or increased damages sustained by the assignee because of the fact that it had made a contract, to which the First National Bank was not a party, with certain railroads, which compelled Krieger's assignee to get these bonds and turn them over. The First National Bank could only be held, if at all, for the market value of the bonds at the time of the alleged conversion, and could not be held for the results of Krieger's assignee's own contract to deliver them to somebody else.

5. The memorandum "5 L. & J. Bonds," on the face of the check, to the left of the signature, at the end of the check, was not a part of the check's order to pay money. It means five L. and J. bonds are collateral for the debt, and no more. It may have been put there as evidence, for our bank, of the pledge, and also as a memorandum to remind the borrower of the five bonds when it paid the check. But it did not say nor have any sign to mean a special pledge for that debt alone. The only circumstance on which any claim of particular or special pledge can be made is that the bonds were deposited with this check, and were intended to, and did secure it, and were noted on the check. But there is no note with collateral given a bank, on which the collaterals are not pledged for the note or check, that they are deposited with. It always means "collateral for the debt."

6. By the general law of the land, a banker has a general lien upon all of the securities deposited in his hands by any

particular person for the amount of the general balance due the bank from such person and such lien covers all securities of the customer that have been placed in the custody of the banker, and upon the faith of which, credit has been extended by the banker, no matter who may be the real owner, and against secret equities of third parties, and such a lien the appellant bank had here. The deposit of these bonds, with the check with the memorandum "5 L. & J. bonds" on the face, was not made "for special purpose with the knowledge and undertaking of the bank," nor "specific to secure a particular debt."

Bank of Metropolis v. New England Bank, 1 How., 234; 6 How., 212; Masonic Bank v. Bangs' Admr., 84 Ky., read., 139-142; Colebrooke on Collateral Securities, Secs. 61, 62 and cases there cited; Gibbons v. Hecox, 105 Mich., 509; State Bank v. Armstrong, 4 Dev., 519; Jones on Law of Pledges, sec. 360.

7. Krieger, as president of the Masonic Bank, should be presumed to know the law and usage as to the bankers' general lien, and if it was understood or agreed that these bonds were not to be subject to it, but only for the special debt he should have expressly provided against it, and when writing the memorandum on the check should have written "special," or some expression to except the bonds from the general lien.

8. There was no evidence of special pledge, and strong testimony of general pledge of these bonds, and the court should not have given the first instruction and should have set aside the verdict as against the evidence. Palmer v. Johnson, Admr., 13 Ky. Law Rep., 590.

9. The only evidence produced on the trial on the issue as to the pledge for this particular debt, was that of Mr. Adolph Schmidt, former president, and Dr. Lewman, president now of the First National Bank, and they proved positively that these bonds were pledged for the whole debt, and there being no testimony impeaching or in any way reflecting upon the veracity of either of these men, whose standing and position entitled them to faith in their statements, the verdict was contrary to the evidence and the new trial should have been granted to defendant. Farris v. Stark, 9 Dana, 129; Robinson v. Dodge, 28 Ill., 161 (81 Am. Dec., 268, with note.)

HELM, BRUCE & HELM, ATTORNEYS FOR APPELLEE.

We claim that we have established by the evidence in this case:

1. That the pledge of the five $1,000 L. & J. Bridge bonds, by

Jacob Krieger, Sr., to appellant, was a specific pledge to secure the $3,000 check alone.

2. That the jury having found this fact to exist, this court will not on the evidence in *this* case reverse on the ground that this finding is flagrantly against the evidence.

3. That the burden was improperly put upon appellee, and that when appellee showed that the bonds were pledged to secure the $3,000 check, as was conceded in the answer, that fact of itself repelled the presumption that the collateral could be held for any other debt, and then the burden rested upon appellant to show a contract by which it was agreed that the bonds might be held for the other debts.

### POINTS AND AUTHORITIES.

1. A pledge of collateral to secure a particular debt repels the presumption that the collateral can be held for any other debt. Masonic Savings Bank v. Bangs, 84 Ky., 135.

2. The theory of a general banker's lien is, that the banker in making loans, does so on the faith of collateral in his hands; therefore a general banker's lien never could apply as to a debt which existed prior to the pledge of the collateral. Coldbrook on Collateral Securities, sec. 61.

3. Appellant can not complain of an error in an instruction when it offered one containing the same infirmity complained of. Smith v. Leforce, 14 R., 400; Union Central Life Insurance Co. v. Hughes, Admr., 22 R., 1551.

OPINION OF THE COURT BY JUDGE PAYNTER—AFFIRMING.

Previous to August 4, 1891, the appellant, the First National Bank, loaned to the Masonic Savings Bank $29,586.59, partly secured by collateral. On that day the latter bank, through its president, Jacob Krieger, Sr., applied to Adolph Schmidt, president of the former bank, for a further loan of $3,000. This application was refused unless collateral was pledged. Shortly after the application for the loan was refused, Krieger again applied for a loan of $3,000. He brought his check, as president, on the Masonic Savings Bank, for that amount, and tendered as collateral five bonds of the Louisville & Jeffersonville Bridge Company, for $1,000 each. Schmidt, for the bank, agreed to make the loan, and

the bonds were accepted as collateral.   Thereupon Krieger's check was cashed, with the understanding it was to be held for some days, but before it was presented for payment the Masonic Savings Bank assigned for the benefit of its creditors.   These words, "5 L. & J. Bridge bonds," were indorsed on the face of the check by Krieger.   At the time the Masonic Savings Bank assigned, it had not paid any part of its indebtedness to the First National Bank, so it owed it $32,586.59.   When the bonds were pledged, they had no commercial value.   In the distribution of the assets of the Masonic Savings Bank, the First National Bank received its proper share.   In the fall of 1891, Jacob Krieger assigned his estate to the appellee for the benefit of his creditors.   He became greatly involved on account of becoming security for the East End Improvement Company, which had built the Louisville & Jeffersonville Bridge; and it is claimed by the appellee that, to protect him in the liability thus assumed, the improvement company delivered to him 73 of the Louisville & Jeffersonville Bridge bonds, and that the five bonds delivered by Krieger to appellant, were part of that number.   In May, 1895, by reason of an arrangement made with certain railroad companies, the bonds had become valuable.   They were to be paid.   The appellee desired to obtain the bridge bonds which had been delivered to Krieger by the improvement company, with a view of having them paid, so as to reimburse, as far as possible, the Krieger estate the sums which he had been compelled to pay for that company.   The appellee, through its president, ascertained that there was due on the $3,000 check $2,987.52.   So in April, 1895, it tendered the appellant that amount in payment of the balance due on the check, and demanded a surrender of the collateral (the five Louisville & Jeffersonville Bridge bonds), which it refused

to surrender, claiming that they also stood in pledge for the
payment of the balance of its debt against the Masonic Sav-
ings Bank. Immediately after the tender the appellant
sold the bonds to Mr. Armstrong, from whom the appellee
obtained them paying $6,462.50. This action was brought to
recover the difference between $2,987.52 and the value of
the bonds. It is claimed they were worth the amount paid
Armstrong for their redemption.

Issues of law and fact were involved in this case. To
recover, it was essential for the appellee to show that the
five bridge bonds belonged to Krieger, not to the Masonic
Savings Bank; for, if they belonged to it, then Krieger's
trustee had no cause of action. To show they did, appellee
introduced T. W. Spindle, president of the appellee, as a
witness. It is urged that the court erred in permitting
him to give certain testimony. As we have concluded
that the appellant can not now complain of the alleged er-
ror, we do not pass upon the question as to whether the
court did err in the admission of the evidence. The reason
for the conclusion will be hereinafter given.

Counsel for appellant insists that the bonds were pledged
to pay the $3,000, but, as they were not pledged to pay
that debt only, the law appropriates their proceeds to the
payment of the balance which is due the appellant by the
Masonic Savings Bank; and, further, it is claimed that there
was an agreement at the time the bonds were pledged that
they were to be a lien for the entire indebtedness of the
bank. It is the contention of the appellee that they were
pledged only for the $3,000 debt, and that when that was
paid it was entitled to have them surrendered to it. We
do not understand that there is much disagreement between
counsel as to the law with reference to the rights of bank-
ers' general liens on collaterals pledged to them. The ap-

pellee does not base its claim upon the doctrine as to the
general liens of bankers, but upon the right of a debtor to
make a special pledge of collateral on a particular debt.
The court below tried the case upon the theory that the ap-
pellee could recover if the bonds had been pledged only for
the $3,000 debt. The court tried the case upon the correct
theory, for this court said in Bank v. Bangs' Adm'r, 84 Ky.,
139 (8 R., 16) (4 Am. St. Rep., 197), "It is equally well settled
that when the deposit is made for a special purpose, with the
knowledge and undertaking of the bank, that purpose must
be carried out, or, when the pledge is specific, to secure a
particular debt, the lien only applies to the debt intended
to be secured by it." In its instructions, the court recog-
nized the doctrine of the Bangs case, for the burden was
placed upon the appellee to show that the collateral was to
secure a particular debt. Instruction No. 1 reads as fol-
lows: "The court instructs the jury that if they believe
from the evidence that in the transaction on the 4th day
of August, 1891, when Jacob Krieger, president of the Ma-
sonic Savings Bank, borrowed from the defendant, the First
National Bank, the sum of $3,000, for which he gave a check
and indorsed on the same, '5 L. & J. Bridge bonds,' the said
memorandum and transaction was intended by the parties
thereto to put in pledge the said five bonds as collateral
security for the payment of the said $3,000, only, then, the
same being a specific pledge for payment of the said sum,
and the said bonds were not in lien beyond the amount of the
said $3,000 check and its interest, then they should find
for the plaintiff the difference of the amount of the note
at the date of the tender, and the value of the bonds." It
is urged, and properly so, that the court should have left
to the jury the disputed fact as to the ownership of the
bonds. The rule that this should be done is so well set-

tled that it can not be a subject of debate. If a court can properly do this, then the necessity for a jury is obviated. The court did not leave to the jury the question as to whether or not the bonds belonged to Krieger. The instructions assumed that they did belong to him. It is probable, from the circumstances which were properly proven, that the jury could not have found otherwise, had the question been submitted to it. The court committed the error because both appellant and appellee offered instructions in none of which the question of the ownership of the bonds was submitted to the jury. On the contrary, they assumed that Krieger was the owner of the bonds. The error committed was the result of the combined action of appellant and appellee. When the instructions offered by the appellant were subject to the same fault as the ones given by the court, there should not be a reversal for such error. Insurance Co. v. Hughes' Adm'r (110 Ky., 26) (22 R., 1549) (60 S. W., 850). To establish the ownership of the bonds in Krieger, appellee introduced Mr. Spindle, president of appellee (the appellee being the trustee of the Masonic Savings Bank as well as of Krieger) as a witness, who gave testimony, over the objection of the appellant, which tended to support that claim. It is insisted that certain parts of his evidence was incompetent to show that Krieger owned the bonds. If the instructions offered by both appellant and appellee assumed that Krieger did own them, and for that reason appellant is not entitled to a reversal, because the court committed the same error in its instructions to the jury, it necessarily follows that there should not be a reversal for the admission of incompetent testimony which only tended to prove the fact assumed in the instructions. Whether or not there had been evidence introduced to establish the ownership of the bonds is immaterial. Evidence,

competent or incompetent, could not have done more than to establish the fact assumed in the instructions.

We can not say that, at first blush, the verdict appears to be flagrantly against the weight of the evidence. Besides two juries have found that the collateral was a special pledge for a particular debt. Under such circumstances, we do not feel authorized to reverse the case on the ground that the verdict is flagrantly against the weight of the evidence.

The judgment is affirmed.

Petition for rehearing by appellant overruled.