## Bell's Admr. v. Louisville Railway Company.

(Decided May 3, 1912.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. **Trial—Misconduct of Counsel.**—Great latitude is always allowed counsel in making their arguments to the jury; but that latitude can not, and ought not to be extended so as to permit counsel to go outside of the record and bring to the attention of the jury matters which have no bearing whatever upon the questions in issue, and which are conveyed to their notice for the sole purpose of inflaming their passions and exciting their prejudices.

2. **Instructions—To Be Offered in Writing.**—Under sub-section 5 of section 317 of the Civil Code of Practice, an instruction asked by either party to an action must be reduced to writing, so that the instruction as asked shall be in writing. An oral request of the court to instruct the jury upon a designated point is an insufficient request; and the failure of the court to comply therewith, will not be reviewed by the Court of Appeals.

3. **Instructions—Written Request for—Not Applicable to Peremptory Instruction.**—The requirement of sub-section 5 of section 317 of the Civil Code of Practice, that requests for instructions by either party must be made in writing, does not apply to a request for a peremptory instruction, since an instruction of that character does not present to the jury any point of law, but takes the case from the jury's consideration.

RAY MANN and GEORGE CARY TABB for appellant.

FAIRLEIGH, STRAUS & FAIRLEIGH and HOWARD B. LEE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On June 28th, 1910, Charles S. Bell was run over by one of appellee's cars, and as a result of his injuries he died the next day. The accident occurred near Beechmont Station, a suburb of the city of Louisville. Beechmont Station is a regular stopping place for passengers. At the place of the accident the railway company has a double track. Woodlawn avenue is a public and regularly dedicated street in Beechmont Addition, a suburb of Louisville, and runs eastwardly and westwardly about 100 feet north of Beechmont Station. The track strikes Woodlawn avenue, and then proceeds westwardly upon that street to and beyond the Grand Boulevard, which is probably 100 yards west of the point where the track strikes Woodlawn avenue. The neighborhood is

dotted with residences, and passengers constantly used Woodlawn avenue and the tracks of the company thereon, as a passway in walking between the Grand Boulevard and Beechmont Station. As the northbound track approaches Beechmont Station, there is a gentle curve to the west until it strikes Woodlawn avenue, and thence the track runs west with that street. On the night of the accident the northbound car, running a little behind time, approached Beechmont Station at about 8:30 p. m. The motorman slackened his speed with the view of stopping his car for any passengers that might be at Beechmont Station; but seeing there were no passengers there he proceeded down the track at the usual rate of speed, going, as he says, from seven to nine miles an hour, but according to other witnesses, at a speed from ten to fifteen miles an hour. When the car reached a point about two hundred feet west of Beechmont Station, and about a hundred feet west of the point where the track enters Woodlawn avenue, it ran upon and over Bell, who was lying upon the track. The motorman, who was the only eye witness of the accident, says he did not see Bell until he was within ten or fifteen feet of him, and that he could not possibly have stopped the car sooner than he did. The front end of the car passed entirely over Bell's body, which was taken from under the middle of the car after it had stopped.

Upon a trial of the case, the jury returned a verdict for the defendant, and from a judgment upon that finding the plaintiff prosecutes this appeal. He relies solely upon two grounds for a reversal; (1) improper conduct on the part of counsel for the appellee; and (2) error of the court in giving instructions No. 1 and 2.

1. The conduct of counsel for the appellee, to which exception was taken, consisted of a line of argument by counsel for the appellee, in which, after devoting a few minutes to the merits of the case, he occupied about two-thirds of his time in insisting that plaintiff was charging the motorman of the car with the crime of murder, and that if the jury found a verdict for the plaintiff, such a verdict would convict the motorman of murder, and brand him a cold-blooded murderer. The exact words of counsel are not shown by the record, but it appears that the foregoing was the substance of the argument upon this point. Counsel for plaintiff having objected to the argument thus made, and the court having overruled the objection, the defendant's counsel

turned to plaintiff's counsel and said, in effect, to the jury: "See, they know what I say is true. I knew they would object to it. Of course, they object to it."

In L. & N. R. R. Co. v. Crow, 32 Ky. Law Rep., 1145, 107 S. W., 807, we said:

"Great latitude is always allowed counsel in making their arguments to a jury; but that latitude can not, and ought not to be extended so as to permit counsel to go outside of the record and bring to the attention of the jury matters which have no bearing whatever upon the questions in issue, and which are conveyed to their notice for the sole purpose of inflaming their passions and exciting their prejudices."

See also the late case of L. & N. R. R. Co. v. Payne, 138 Ky., 274.

While we can not approve of so much of the argument as was not based upon the merits of the case, it does not appear that appellant's rights were prejudiced thereby. The objectionable portion of the argument hardly excited or aroused either the passions or prejudices of the jury; at most it was misleading; and as appellant's counsel had the closing argument, they doubtless more than repaired any injury appellant might have received by reason of the irregular argument. A wide latitude is always allowed counsel in argument, particularly where the opposing counsel has the closing argument. We are of opinion the conduct of counsel for appellee was not prejudicial to appellant's substantial rights.

2. It is further insisted, however, that the court erred in failing to incorporate in its instructions a duty on the part of the motorman to run the car at a reasonable rate of speed. Instructions No. 1 and 2, to which exception is taken, read as follows:

"1. It was the duty of the defendant's motorman in charge of the car mentioned in the evidence to exercise ordinary care, to avoid injuring persons that might be upon the company's tracks, which duty included the duty to keep a look-out for any person that might be upon the track."

"2. Unless the jury believe from the evidence that the defendant's motorman upon the occasion mentioned in the evidence, saw, or could by the exercise of ordinary care have seen, Charles S. Bell, upon the track in time to have, by the exercse of ordinary care and the use of the means at hand, avoided injuring him, and that the

motormen negligently failed to exercise such care or such means, and that by reason of such failure, if any there was, the car ran over Charles S. Bell, then the law is for the defendant and the jury should so find.''

The bill of exceptions shows that plaintiff by counsel ''orally, and not in writing, moved the court to instruct the jury that it was the duty of the motorman in charge of the car at the time and place of the accident complained of in the petition, to run his car at a reasonable rate of speed. Said motion of plaintiff was overruled by the court, to which ruling plaintiff by counsel at the time excepted.''

Appellee insists, however, that the court properly refused to submit that question to the jury because the appellant failed to ask such an instruction in writing. Sub-section 5 of section 317 of the Civil Code of Practice provides, in part, as follows:

''If a general verdict be required, either party may ask written instructions to the jury on points of law, which shall be given or refused by the court before the commencement of the argument to the jury.''

It is contended, however, that this provision of the Code is satisfied whenever a party orally asks the court to reduce its instructions to writing; that it does not require the request to be in writing. We do not think, however, that the language above quoted is susceptible of so narrow a construction, since it will be noticed that either party not only ''may ask written instructions to the jury on points of law,'' but it further provides that ''these instructions shall be given or refused by the court.'' This clearly means that the instructions, as asked, must be in writing, and when so asked it is the duty of the court either to give them or refuse them.

If the law-makers had intended to impose no duty upon the parties to reduce their instructions to writing, but that the court must do that work for them, they might well have rested with the first portion of the . clause above quoted, which provides that ''either party may ask written instructions to the jury on points of law;'' but in adding that these instructions, so asked, ''shall be given or refused by the court,'' they clearly meant the instruction should be asked in writing. If the meaning were otherwise, how is the court to refuse, of record, an instruction asked orally? Section 347 of the Code of 1854 provided, that ''when the evidence is concluded, either party may request any instructions to

the jury on points of law, which shall be given or refused by the court; which instructions shall be reduced to writing if either party require it."

In speaking of this provision of the old Code in Ferguson v. Fox's Admr., 1 Met., 83, the court said:

"This we regard as a very salutary provision. The exact import of an instruction can be better comprehended when it has been reduced to writing, than it can be when given orally. The controversies which sometimes arise after the trial, with respect to the precise nature and extent of the verbal instructions which were given, will be avoided by having them reduced to writing. The rights of the parties will also be more effectually secured, and the ends of justice better promoted, by having it done. The failure of the court, therefore, to reduce the instructions to writing when required by either party, would be an error sufficient to reverse the judgment." .

It will be seen that sub-section 5 of section 317 of the present Code of 1877 is a radical departure from section 347 of the former Code; since in the former, the instructions must be asked in a written form, while section 347 of the Code of 1854 not only contained no such requirement, but required them to be reduced to writing only when required by one of the parties to the action.

In construing section 317, sub-section 5, this court, in Traders' Deposit Bank v. Henry, 105 Ky., 709, said:

"Every reason requiring the instructions asked by the parties to be put in writing applies with equal force to instructions given by the court itself. It is a well known matter of history in this State that the old practice obtaining before the adoption of the Code, of charging the jury orally, was unsatisfactory, and that it was one of the objects in the adoption of the Code to abolish oral instructions to the jury, and require all instructions to be in writing. There is nothing in the provision quoted to show that the Legislature intended to change the rule again, and go back to the old system.

"In Cook v. Meacham, 7 Ky. Law Rep., 836, and Vanmeter v. True, 16 Ky. Law Rep., 320, the Superior Court, in two well considered opinions, held it error to give oral instructions under the present Code, when objected to; and it seems to us that this is a sound and salutary rule, which ought not now be departed from."

See also L. & N. R. R. Co. v. Banks, 17 Ky. Law Rep., 1065; 33 S. W., 627.

In Webster v. Green, 22 Ky. Law Rep., 1457; 60 S. W., 714, the necessity of written requests for instructions was well pointed out, in the following language:

"In this case there was no formal motion for written instructions, except as to the two asked by appellant. There was, however, a request for these as well as an objection and exception to the oral instructions given. The bill of exceptions does not state whether the objection was to substance or form, but it would be useless to take an exception to the substance of an instruction where the instruction is not made a matter of record, as without it, we could never determine whether it was correct or not. It must be held that an objection to oral instruction is to form as well as substance, and especially will that be held where written instructions were submitted to the court with a request to give to the jury."

The argument here made that an instruction might be asked orally, and that the court should then reduce it to writing, might have been a sound argument under section 347 of the Code of 1854, which provided that the court should reduce the instructions to writing when asked to do so by either party; but the change in the new Code was evidently made to remedy this uncertainty, by requiring instructions to be asked in writing, which are to be given or refused by the court, in the form in which they had been asked, in order that, in case of a refusal by the court, the party's rights may be preserved with accuracy and certainty, and upon the record.

All the reasons given in Furguson v. Fox, supra, for the necessity and propriety of the court reducing its instructions to writing, apply equally to instructions asked by the parties. If the parties were permitted to ask instructions orally there would be an unending controversy after the trial was over, as to the exact form in which the instructions had been asked. Evidently the legislature had this in mind when it revised the Code and substituted the explicit provision we now have, in place of the uncertain language of the old Code.

This rule of practice does not militate against the well known practice pointed out in L. H. & St. L. Ry. Co. v. Roberts, 144 Ky., 820, which requires the court, when it undertakes to instruct the jury upon all the issues of a case, to give the whole law of the case, or that when a party asks an instruction upon a given issue, and

the instruction is incorrect, it is the duty of the court to give a correct instruction upon that issue, since, in the case at bar, the court properly instructed the jury upon the issue presented by the instruction. Appellant attempted to have the court instruct the jury upon the question of the rate of speed as an essential and necessary instruction in this case; but the court, differing from counsel for appellant, thought there was no evidence to authorize the submission of that question to the jury, and it therefore declined to so instruct. This was not a failure on the part of the court to properly instruct the jury upon a given theory of the case, but it was a declination on the part of the court to instruct the jury upon that theory of the case for want of evidence to support it.

Furthermore, that portion of the rule which requires the court to give a correct instruction in lieu of one asked by a party which is incorrect either in form or substance, only required the court to properly instruct the jury where the party asked an instruction upon that point; and to properly ask an instruction, it should have been presented in writing. Therefore, under either view of the case the failure of the court to incorporate in its instruction, a modification as to speed, as was orally asked by appellant, was not a reversible error.

It is to be observed, however, that the rule requiring instructions to be asked in writing, does not apply to a peremptory instruction, since an instruction of that character does not present to the jury any point of law, but takes the case from the jury's consideration. The purpose of the Code in requiring written instructions to the jury on points of law was to obtain certainty and definiteness in the questions of law presented in order that they might be intelligently applied and reviewed; but when the court withdraws the case from the jury, no question is submitted to the jury, and the necessity for a written request for such an instruction does not exist, and is not called for by the language of the Code.

Judgment affirmed.