## Louisville & Nashville R. R. Co. v. Woodford and Ireland

(Decided February 21, 1913.)

### Appeal from Fayette Circuit Court.

1. Verdict—Contradictory Evidence—When Court of Appeals Will Not Disturb Finding of Jury.—When the evidence is contradictory, the Court of Appeals will not disturb the finding of a jury upon the ground that the verdict is against the evidence, unless it be palpably and flagrantly so, or clearly shows that the jury were mistaken, or were influenced by passion, prejudice or corruption.

2. Instructions—Party Cannot Predicate Error in Instruction Given at his Request.—A party cannot predicate error in an instruction given at his own request, or in one of the same effect, given by the court.

3. Federal Question—When Will Not Be Reviewed by Court of Appeals.—A federal question suggested for the first time in the oral

argument of the motion for a new trial, but which was not mentioned or raised in the pleadings, instructions, or grounds for a new trial, will not be reviewed by the Court of Appeals.

R. A. THORNTON, BENJAMIN D. WARFIELD, and C. H. MOORMAN, for appellant.

ROBERT B. FRANKLIN and ROBERT C. TALBOTT, for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On November 17, 1910, the appellant, the Louisville & Nashville Railroad Company received from the appellees, Catesby Woodford and John T. Ireland, seven thoroughbred horses, at Lexington, Kentucky, for shipment and transportation to Juarez, Mexico. The petition alleges that the plaintiffs, in order to afford the necessary light in the car which contained the horses, equipped said car with two suitable lanterns in the manner usual and customary in the shipment of horses over railroads, by hanging, swinging, wiring and anchoring said lanterns in said car securely and safely; that when the car reached appellant's freight yards at West Frankfort, Kentucky, about midnight, appellant's agents, employes and servants negligently and carelessly struck, crashed and jammed the car containing said horses against its engine and other cars, with such force and violence, that it tore down one of said lanterns while lighted, and thereby set fire to the car and its contents, resulting in the death of three of said horses, and serious injury to the other four.

On January 6, 1911, the appellees filed this action against the appellant in the Fayette circuit court for damages, laying their loss at $25,225.00, for which they prayed judgment. The trial resulted in a verdict for the plaintiffs for $15,000.00, and from a judgment upon that verdict the defendant prosecutes this appeal. The company assigns three grounds for a reversal: (1) the damages are excessive; (2) the verdict is not supported by the evidence, which, it is claimed, shows no negligence upon the part of appellant's agents or servants; but, on the contrary, that the injuries were received by reason of the contributory negligence upon the part of appellees' servants; and, (3) the instructions given by the court do not embrace the full law of the case. As these are the only errors assigned in appellant's "Points and Authorities" to its original brief filed herein on August 31, 1912, the other errors alleged in the grounds for a

new trial will be treated as having been abandoned. We
will consider the questions raised in the order given.

1. The values fixed upon the horses by the plaintiff
Woodford, are as follows:

Star Shoot colt out of Last Cherry_____$7,500
Star Shoot colt out of Blue Danube_____7,500
Miller filly out of Lady Beth_____ 2,500
Miller filly out of Lady Premier_____ 1,500
Ethelbert filly out of Miss Wicks_____ 1,500
Jack Point colt out of Lady Vincent_____ 1,500
Star Shoot colt out of Amy Davenport____ 4,000

The appellees introduced eight witnesses as to the
value of the Star Shoot colt out of Last Cherry, the
average of their valuations being $7,468.75; eight wit-
nesses as to the value of the Star Shoot colt out of Blue
Danube, the average of their valuations being $7,687.50;
five witnesses as to the value of the Miller filly out of
Lady Beth, the average of their valuations being $1,800.-
00; four witnesses as to the injury to the Miller filly
out of Lady Premier, the average loss being $937.50;
five witnesses as to the injury to the Ethelbert filly out
of Miss Wicks, the average estimated loss being $830.00;
three witnesses as to the injury to the Jack Point colt
out of Lady Vincent, the average loss being $758.33;
and six witnesses as to the injury to the Star Shoot
colt out of Amy Davenport, the average loss being
$2,750.00. A recapitulation of the average values as
given by these witnesses, shows the total valuation of
the horses killed to be $16,956.25, and $5,275.83 loss on
the horses that were injured, making a total loss upon
the killed and injured of $22,232.08, when all the valua-
tions are taken into consideration. Under the evidence
there can be no doubt that these horses were as finely
bred as any race horses in America, and there can be
no doubt that the witnesses who testified as to their
value are all experts in their line and unexcelled as judges
of horse values. The appellant introduced no witness
upon the subject of values; but it insists that the facts,
which it brought out on cross-examination, that at a
public sale in New York in August, 1910, two Star Shoot
colts sold for $1,600.00 each, an Ethelbert filly sold for
$100.00, and another Star Shoot colt sold for $600.00,
show conclusively that the valuations given by appel-
lees' witnesses are not only wholly speculative and un-
warranted, but are contradicted by these actual sales.

Appellees claim to have met this argument, however, by showing that at the time of this collision in November, 1910, which was immediately after the gubernatorial election in New York, the price of race horses advanced materially by reason of the prospect of the speedy resumption of racing in New York; and that by August of that year, when the sales cited by appellant were made, there had been a slump in the horse market. Furthermore, appellant shows that Mr. Wodford had a sale upon his farm in 1911 of other colts of the same breed, and that at that sale they brought much lower prices than the values fixed by the witnesses in this case. The witnesses as to values gave their reasons at great length, and took into consideration every element that properly could be considered in fixing those values. It would be both unnecessary and unprofitable to review those reasons at length, in the face of the well established rule in this state, that when the evidence is contradictory this court will not disturb the finding of a jury upon the ground that the verdict is against the evidence, unless it be palpably and flagrantly so, or clearly shows that the jury were mistaken, or were influenced by passion, prejudice or corruption. Casky v. January, Hard., 549; Hughes v. Brown, 1 A. K. M., 28; Empire Coal & Mining Co. v. McIntosh, 82 Ky., 560; L. & N. R. R. Co. v. Mitchell, 87 Ky., 327; L. & N. R. R. Co. v. Ballard, 88 Ky., 159; L. & N. R. R. Co., v. Cottongim, 119 S. W., 752; Cox's Admr. v. L. & N. R. R. Co., 137 Ky., 397; Louisville Ry. Co. v. Bryant, 142 Ky., 163; Lexington Canning Co. v. Thomas, 21 Ky. L. R., 36, 50 S. W. 993.

As was said in L. & N. R. R. Co. v. Mitchell, 87 Ky., 337:

"The amount allowed seems large. It is so. The fact, however, that it appears high to us does not authorize a reversal. We are not acting as a jury, and it is only when it is glaringly excessive, and appears at first blush to have resulted from passion or prejudice, that we can interfere. The power should be sparingly exercised, and only in extreme cases. This is the policy of the law, and reasonably and necessarily so."

Under this thoroughly established rule, we do not feel at liberty to disturb the finding of the jury.

Furthermore, in view of the fact that the verdict is a compromise of the values as fixed by the witnesses

upon that subject, it would seem that the evidence sustains the verdict, rather than discredits it.

2. There were two lanterns in the car, suspended from the ceiling, and wired to the sides. The purpose of those lanterns was to give light for the attendants in charge of the horses. Appellees show that these lanterns were placed in the car in the usual manner, and were securely wired so as to prevent accidents from the jarring of moving cars, while appellant insists that the lanterns were wired in such a way as not to make them safe. Upon this subject the evidence is contradictory; but as that question was fairly submitted to the jury as one of the elements they were to consider in finding their verdict, it will not be disturbed since there was evidence upon either side of the proposition.

The same may be said as to the counter-charge that Frakes and Moore, the two employees of the appellees who were accompanying the horses, were guilty of contributory negligence in bringing about the accident, by accidently setting fire to the car while smoking. The testimony upon that subject was quite contradictory, there being testimony upon either side of the proposition, the weight of it, however, being with the appellees. In presenting the law of the case, the court gave the following instructions:

(1.) "If the jury believe from the evidence, that the plaintiffs, at the time, and on the occasion mentioned, shipped from Lexington, Kentucky, the head of horses in question, consigned to Jno. T. Ireland, Juarez, Mexico, by a contract of shipment previously made between the plaintiffs and defendant company, and that at West Frankfort, Kentucky, a station or yard on defendant's line of railway, and while in charge of defendant for transportation, under said contract, the defendant railroad company, or its agents, or servants, or employes struck or bumped the car in which plaintiff's horses were being hauled against its engine or other cars in a negligent manner, and that the said negligence, if any, on the part of the defendant caused one of the lanterns used by the plaintiffs or those in attendance, to set fire to the contents of said car, and to injure the plaintiff's horses, or any of them, they should find for the plaintiffs, unless they should believe from the evidence, that the plaintiffs, or the attendants in charge of said horses, Chester Frakes and Horace Moore, or either of them,

were guilty of negligence, as explained in Instruction No. 2.''

(1 1-2.)  ''Unless the jury believe from the evidence, that at the time and on the occasion mentioned, the defendant railroad company, or its agents, servants or employes, struck or bumped the car in which plaintiff's horses were being hauled against its engine or other cars in a negligent manner, and that the said negligence, if any, on the part of the defendant caused one of the lanterns used by the plaintiffs or those in attendance to set fire to the contents of said car, and to injure the plaintiff's horses, or any of them, they should find for the defendant.''

(2.)  ''If the jury believe from the evidence, that Chester Frakes and Horace Moore, the attendants in charge of said horses, or either of them, were guilty of negligence while in charge of said horses, and that such negligence, if any, directly or proximately contributed to the injuries to said horses, or any of them, and that but for such negligence, if any, on the part of said persons, or either of them said horses would not have been injured, the jury should find for the defendant, even though they may believe from the evidence, that the defendant, its agents, servants or employes, in charge of the train by which said horses were being transported, were themselves negligent.''

(3.)  ''The negligence of Chester Frakes and Horace Moore, if either or both were negligent, was the negligence of the plaintiffs.''

(4.)  ''If the jury find for the plaintiffs, they should find for them such sum in damages as they believe from the evidence, would fairly and reasonably represent the fair market value at Lexington, Kentucky, of the chestnut colt by Star Shoot, dam, Last Cherry, the chestnut colt, by Star Shoot, dam, Blue Danube, and the bay filly, by Miller, dam, Lady Beth, at the time of the accident, and such further sum in damages as they may believe from the evidence, would fairly and reasonably represent the difference, if any, between the fair market value of the remainder of said horses in the condition they were in immediately before the accident, and their value at such reasonable time after the accident, as the extent of their injuries, if any, traceable directly to the accident in question, has been, or might have been ascertained

not exceeding in the aggregate $24,525.00, the amount sought in the petition.''

(5.) ''Negligence, as used in these instructions, is a failure to use ordinary care. Ordinary care is such care as a person of ordinary prudence would exercise under like, or similar circumstances.''

(6.) ''Nine or more jurors may make a verdict. If less than the whole concur, the verdict should be signed by those concurring.''

And, in order that we may have before us appellant's view of the law governing the case, we copy the instructions asked on its behalf, but not given. They are as follows:

A. ''If the jury believe from the evidence, that Chester Frakes and Horace Moore or either of them, the attendants in charge of the horses, failed to use such care in the discharge of his duties as persons of ordinary prudence engaged in the same business usually exercise under like conditions to those in evidence, and that but for such failure on his part, if any, the fire would not have occurred they should find for the defendant.''

B. ''If the jury believe from the evidence that the fire in question was caused by the lanterns or either of them in the car, they should find for the defendant.''

C. ''If the jury believe from the evidence that the alleged injuries to the horses in question were caused by a fire inside of the car in which the horses in question and Chester Frakes and Horace Moore, plaintiffs' attendants in charge of said horses were then being carried, and that such fire was caused by any negligent or careless act or acts on the part of such attendants, and that but for such act or acts, if any, such fire would not have occurred, they should find for the defendant.''

C 1-2. ''The court instructs the jury that the negligence or carelessness of Chester Frakes and Horace Moore, if either or both of them were negligent or careless in the performance of their duties, or any of them, was the negligence or carelessness of the plaintiff.

D. ''If the jury find for the plaintiffs they will fix the damages in such sum as would represent the fair market value at Frankfort, Kentucky, of such of said horses as were killed, and in addition thereto such further sum as will compensate them for the difference, if any, between the value of such other of the horses in question as were injured, if any, between the value

of such other of the horses in question as were injured, if any, just before they were injured, and their respective values after the extent of their respective injuries were reasonably ascertained.''

E. ''Unless the jury believe from the evidence that the fire in question was caused by the negligence of the defendant, that is, by its failure to use such care as persons of ordinary prudence engaged in like business, exercise under similar conditions, they should find for the defendant.''

It will be seen that instructions 2 and 3 given, are, in substance, the same as instructions C. and C 1-2 asked by appellant, and substantially presented its view of the law to the jury, upon the point of contributory negligence.

3.  Finally, it is complained that the instructions are otherwise erroneous; and, for specifications, it is urged (a) that they afforded the jury no guidance in measuring the respective duties of the plaintiffs and the defendant through their agents; (b) that the term ''negligence'' as defined by the fifth instruction, authorized the jury to apply that term to any act to which they might choose to apply it; and, (c) that they left it to the jury to excuse the attendants, Frakes and Moore, for any act for which the jury might wish to excuse them.  It is a general rule that it is not the duty of the trial court to deal separately with particular phrases or fragments of the testimony, and instruct thereon.  The instructions have been heretofore set out in full in this opinion and speak for themselves.  In our opinion they fairly and fully presented the law upon the issues raised by the pleadings.  Recurring to the instructions, and reviewing them as a whole, it will be seen that by instruction No. 1, the jury were told, in appropriate terms, that if the defendant company, or its agents, or servants, or employes struck or bumped the car in which the plaintiffs' horses were being hauled against the engine or other cars in a negligent manner, and said negligence, if any, on the part of the defendant caused one of the lanterns used by plaintiffs to set fire to the contents of the car, and to injure plaintiffs' horses, or any of them, they should find for the plaintiffs, unless the plaintiffs, or their attendants in charge of said horses were, or either of them, was guilty of negligence as explained in instruction No. 2.  Instruction No. 1 1-2 is the converse of in-

struction No. 1, and was evidently given out of abundant caution, and for the purpose of presenting defendant's view of the case, independently of the first instruction. Instruction No. 2 covered appellant's view of the case, that the negligence of Frakes and Moore caused the injuries, and was drawn in as strong terms as appellant could have asked. The fourth instruction fixed the measure of damages in case the jury should find for the plaintiffs, at the fair market value at Lexington, Kentucky, of the horses killed, at the time of the accident, and the fair and reasonable difference between the fair market value of the injured horses in the condition they were in immediately before the accident, and their value after the accident. Indeed, this instruction upon the measure of damages is substantially the same as Instruction D offered by the appellant.

Appellant insists, furthermore, that the court should have given instruction B asked by it, and set out above, in full. This instruction, of course, was asked upon the theory that there was no unusual or unnecessary movement of the car to cause the lanterns therein to fall, and set fire to the car. That, in effect was to ask a peremptory instruction on behalf of the appellant, since it is manifest from the evidence that the fire was caused by the lanterns, or by one of them. The controlling question, however, as we understand the law of the case, was not whether the lanterns caused the fire, but what caused the lanterns to break and fall; and that question was properly submitted to the jury. In our opinion the instructions fairly and fully presented the law of the case.

4. Appellant filed its brief upon this appeal on August 31, 1912, and the action was submitted in this court on October 17, 1912. On January 24, 1913, appellant tendered a supplemental brief, suggesting, for the first time in this court, that the rule in this state that the limited valuation clause in contracts of shipment are not enforceable against the shipper in the absence of fraud, is in violation of section 20 of the "Carmack Amendment" to the Act of Congress known as the Interstate Commerce Law. It is now claimed, for the first time, that under said amendment, the duty to issue a bill-of-lading and the liability thereby assumed, was fully covered by the federal act, and supersedes all state legislation and decisions upon that subject, and that the effect

of said act as thus claimed by appellant had been fully upheld by the opinion of the Supreme Court of the United States in the late case of Adams Express Co. v. Croninger, decided January 6, 1913, and reported in 226 U. S., page 491.

It is a well established rule of law in Kentucky that the contract of a carrier to relieve itself from its common law liability by arbitrarily fixing the value of the property carried, is in violation of section 196 of the Constitution, and void, except in cases of fraud practiced upon the carrier. Adams Express Co. v. Walker, 119 Ky., 121, 67 L. R. A., 412; Southern Express Co. v. Fox & Logan, 131 Ky., 257. The case at bar was practiced under that rule. It is, however, now pointed out that the bill-of-lading limited the carrier's liability for a stallion or jack to $150.00, and for a horse or mule to $100.00; and it is urged that under the "Carmack Amendment" as interpreted in the Croninger case, *supra*, appellant's liability should have been measured at that rate.    Appellees object to the consideration of this question upon the ground that it was never presented to the trial court for adjudication, and consequently is not now before this court for review.

It is an elementary rule, of almost universal application, that questions not raised in the trial court in some effective and appropriate manner, will not be considered on appeal. This rule was fully recognized in Acme Mills & Elevator Co. v. Rives, 141 Ky., 786, where we said:

"It may be considered as well settled in this jurisdiction, that no error committed during a trial is available upon appeal, unless it has been specifically relied upon in the grounds set forth in support of a motion for a new trial. L. C. & L. R. R. Co. v. Mahoney, 7 Bush, 238; Commonwealth v. Williams, 14 Bush, 297; Alexander v. Humber, 86 Ky., 569; Hatfield v. Adams, 123 Ky., 422. And this is true although objection was made and exception taken to the ruling at the proper time, as was done in this case. McLain v. Dibble, 13 Bush, 297; Harris v. Southern Railway Co., 25 Ky. L. R., 560. Unless the error of the circuit court is specifically made a ground for a new trial, it will be regarded as having been waived in that court, and is necessarily beyond the sphere of this court's supervisory jurisdiction, which is only to decide whether, on the grounds properly be-

fore it, the circuit court erred in its judgment. Hopkins
v. Commonwealth, 3 Bush, 481; Slater v. Sherman, 5.
Bush, 211; Civil Code, section 343.''

Furthermore, a blanket assignment ''of error of law
occurring at the trial and excepted to at the time,'' as
we have in the seventh and last ground assigned for a
new trial in the case at bar, is not sufficiently specific
to raise any question upon appeal. Muex v. Muex, 81
Ky., 475; L. & N. R. R. Co. v. McCoy, 81 Ky., 403;
American Credit-Indemnity Co. v. National Clothing.
Co., 122 S. W., 840.

The office of the pleadings is to make plain the issues
between the parties; and upon the issues thus raised the
parties are entitled to have the case tried.

Bearing in mind these elementary rules of pleadings
and practice, and turning first to the pleadings, we find
no federal question suggested anywhere. The answer,
filed February 27, 1911, contained a traverse of the pe-
tition and an affirmative plea of contributory negligence
upon the part of Frakes and Moore, the attendants in
charge of appellee's horses. The reply, filed March 10,
1911, closed the pleadings. Up to that time the bill-of-
lading, which constituted the contract of shipment had
not appeared in the record, the appellant having pre-
pared its defense strictly under the State law, without
even an attempt to raise a federal question. However,
on November 9, 1911, upon motion of appellant, the ap-
pellees filed the bill-of-lading. The trial began on De-
cember 18, 1911, and was concluded on the 22nd of that
month, when the jury returned the verdict heretofore
indicated. On the next day, December 23, 1911, appel-
lant entered its motion, upon grounds then filed, for a
new trial; but nowhere in the seven grounds distinctly
and separately set forth as required by the Code, is a
federal question of any kind suggested. Neither did
the additional grounds for a new trial, filed on January
6, 1912, suggest any such question. The first and only
reference, either directly or indirectly, to the federal
question now suggested, is contained in the order of Feb-
ruary 3, 1912, which, after directing the filing of certain
affidavits to be read on the motion for a new trial, and
which in no way bore upon or suggested the federal ques-
tion, closed as follows:

''Thereupon the court heard argument by counsel for
plaintiffs and defendant respectively upon the motion

and grounds for a new trial of this cause filed herein by the defendant, Louisville & Nashville Railroad Company; and also heard said counsel upon the federal question raised by the defendant as to whether the contract in question for the transportation of said colts and fillies mentioned in the petition from Lexington, Kentucky, to Juarez, in the Republic of Mexico, was in violation of the provisions, or any of them, of an act of Congress of the United States entitled an act to regulate commerce, approved February 4, 1887, as amended by an act approved March 2, 1889, by an act approved February 10, 1891, by an act approved February 8, 1895, by an act approved June 29, 1906, by a joint resolution approved June 30, 1906, by an act approved February 25, 1909, and by an act approved June 8, 1910; and having considered the said motion and grounds for a new trial of this cause, and having also considered the said federal question and being of the opinion that said contract did not and does not violate any of the provisions of said act of congress, the motion is hereby overruled and a new trial is refused.''

It will be noticed that this order recited the fact that the court heard counsel upon the question whether the contract of shipment mentioned in the petition was in violation of any of the provisions of the Act of Congress to regulate commerce, giving the date of the act and the amendments thereto; and that the court, having considered the motion and grounds for a new trial, and the said federal question, was of opinion that the contract did not violate said Act of Congress. By that order, however, the court overruled no motion of appellant based upon a federal question, since no such motion had been made.

In view of the fact that the question had been nowhere raised by the pleadings, instructions, or motion for a new trial, or by a motion of any kind, we must conclude that it was raised orally, and was discussed as an academic question. But, under section 115 of the Civil Code of Practice, pleadings are required to be in writing; by subsection 5 of section 317 instructions must be in writing; and under sub-section 1, of section 624, even notices are required to be written. A mere oral request of the trial court to instruct upon any given question brings no question before this court for review. Bell v. Louisville Railway Co., 148 Ky., 189. The bill of

lading contained a limitation of appellant's liability, which appellee was not required to plead. If appellant had desired to take advantage of its limited liability unquestionably it was its duty, under the Code of Practice, to specifically rely upon it in its answer. This it wholly failed to do.

The futility of appellant's attempt to raise the question, for the first time; and orally, upon the argument of the motion for a new trial, will be easily realized if we should conjecture what order the court could or would have entered, in case it had been of a contrary opinion, to-wit, that the bill-of-lading did violate the provisions of the Interstate Commerce Act. It could not have sustained the motion for a new trial, because it was confined to the grounds specified; Civil Code of Practice, s.c. 343; Harris v. Southern Ry., 25 Ky. L. R., 559; 76 S. W., 151. Neither could it have given judgment for the appellant upon the pleadings and notwithstanding the verdict, because no federal question was suggested by the pleadings. At most, the federal question was merely raised and discussed academically, after the trial had been completed, and at a stage of the proceedings too late to bring it before this court. The reason given for the rule that a question not raised in the trial court will not be noticed on appeal because to do otherwise would deprive the opposite party of the proper opportunity of avoiding the effect of the objection by amendment, or by supplying any defects in his pleadings, applies strongly here.

Furthermore, the federal question now suggested was not only ignored in Instruction D, offered by appellant upon the measure of damages, but, it will be noticed that by that instruction appellant, practicing under the State law, asked the court to direct the jury, in case it should find for the appellees, to fix the damages in such sum as would represent the fair market value of the horses at Frankfort, of such as were killed, and the difference between the value of the horses that were injured and their value just before they were injured. By referring to Instruction 4 given by the court, it will be seen that that instruction lays down the same measure of damages.

It is a well settled rule in this jurisdiction, that a litigant cannot complain of an instruction which is the same, or is to the same effect, as one he requested. Toner's Admr. v. South Covington & C. St. Ry. Co., 109 Ky., 41;

Union Central Life Insurance Co. v. Hughes, 110 Ky., 26; First National Bank v. Germania Safety Vault & Trust Co., 112 Ky., 734; L. & N. R. R. Co. v. Penrod's Admr., 24 Ky. L. R., 50, 66 S. W., 1013, 1042; Stowers v. Singer, 113 Ky., 584; Harris v. Southern Railway Co., 25 Ky. L. R., 559, 76 S. W., 151.

As was said in First National Bank v. Germania S. V. & T. Co., *supra.*

"When the instructions offered by the appellant were subject to the same fault as the ones given by the court, there should not be a reversal for such error. Insurance Co. v. Hughes' Admr., 110 Ky., 26.''

Furthermore, it is well settled that it is not the duty of the trial judge, in a civil case, to give all the law of the case; if a party desires an instruction upon a question upon which no instruction is given, he must ask it in order to put himself in a position to have the questioned reviewed. J. B. Pilcher Mfg. Co. v. Teupe's Extx., 28 Ky. L. R., 1350, 91 S. W., 1125. His failure to request an instruction precludes objection on the ground that those given were not complete. Patterson v. T. J. Moss Tie Co., 30 Ky. L. R. 9, 97 S. W., 379. Not only did appellant fail to raise the question by his pleadings, or by a requested instruction, but he tried the case throughout under the state law governing the question; and a rule permitting a litigant in an instance like this, to commit himself by his pleadings to one theory of the case and try it throughout upon that theory, and subsequently to seek its reversal upon a question not theretofore raised, and after his opponent's opportunity to meet the newly suggested question has passed, would inevitably lead, not only to a miscarriage of justice, but to a waste of the time of the tribunals provided by the state for the administration of justice. The federal question now suggested was not raised in the trial court; is not before us for review; and cannot be considered or decided.

Judgment affirmed.