Germania Insurance Company of New York v. Rudwig, &c.

CASE 43—ORDINARY—APRIL 13, 1882.

# Germania Insurance Company of New York v. Rudwig, &c.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. An honest belief in the truth of the statements of the assured, when not material to the risk, although untrue when made, should not avoid a policy of insurance.

2. It is contrary to the intent of the parties and subversive of the good faith and fair dealing that should enter into and form a part of every insurance contract, to avoid it because of any trivial misrepresentation not material to either party.

3. It is evident that the parties were looking to the facts material to the risk, and not to minute statements of the ages of ancestors or their nationality.

4. The purpose of the act of February 4th, 1874, was to bring the representations and warranties of the assured within its provisions, and to prevent the assured from losing his indemnity, either upon a representation or warranty not fraudulent nor material to the risk.

5. So much of the opinion in the case of the Farmers & Drovers' Ins. Co. v. Curry as expresses opposite views to this is overruled.

6. Although the assured removed from Louisville to Mississippi, against the terms of the policy, yet, as the appellants, by their agent, recognized his removal and continued to receive the premiums upon the policy up to the death of the assured, they are estopped from demanding its forfeiture.

WM. REINECKE FOR APPELLANT.

1. The appellant is not bound by the representations of its local agent; nor did appellant ratify his acts. (Craycroft v. Selvage, 10 Bush. 708; 24 Ohio, 81; Phœnix Ins. Co. v. Lawrence, 4 Met., 13; 12 Bush, 29; 4 Vroom, 487; 13 Bush, 534; 10 N. Y., 213; 4 Selden, 398; 7 Cowen, 739; 40 Barb., 654; 5 Otto, 332; 4 Bigelow, 124.)

2. The evidence in regard to conversations with the agent was improperly admitted. (Coppage·v. Commonwealth, 3 Bush, 532.)

3. There was no evidence supporting appellees' plea of waiver. (4 B. Mon., 400.)

4. All the statements in appellees' declaration are made material by the contract of insurance. (Session Acts 1873-'4, vol. 1, p. 20; 4 Dana, 381; 2 B. Mon., 310; 4 *Ib.*, 204; 10 *Ib.*, 416; 4 Met., 301; 11 Bush, 449.)

5. Identity of name is *prima facie* evidence of identity of person. (3 A. K. M., 204; 5 Cowen, 237; 18 N. Y., 92; 33 Ill., 342; 18 Mo., 276; 29 Vermont, 182.)

P. B. MUIR AND YOUNG & TRABUE FOR APPELLEES.

1. The whole case shows that Gotthelf's statement that he was insured in the Ætna Life Insurance Company was wholly immaterial. And so with his statements as to the age of his father and mother, and the cause of their deaths.

2. Gotthelf changed his residence with the knowledge and consent of appellants, and continued to pay premiums upon the policy. If there was a right of forfeiture, it was waived. (5 De Gex M. & G.,. 265; 23 Conn., 253; 26 Pa., 201; 52 Maine, 340; 31 Conn., 193.)

3. The act of 1874 is only declaratory of the law as it then existed. (11 Bush, 573; 12 *Ib.*, 29.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This action was instituted in the Jefferson court of common pleas by Rudwig and Banchart (the appellees) against the Germania Life Insurance Company of New York on a policy of life insurance, by which the life of Bernard H. Gotthelf was insured for their benefit. At the time the policy was issued, Gotthelf was a resident of the city of Louisville. He removed from that city to Vicksburg, Mississippi, and died near the latter city, of yellow fever, on the 7th of September, in the year 1878.

The petition contains the usual averments essential to a cause of action on such a policy. In the second paragraph of the answer, or that portion of it necessary to be considered, the company alleges that the policy was issued on the faith of a written declaration by the plaintiffs and Gotthelf, dated in April, 1869, and made part of the contract of insurance, by the terms of which it was provided *that it should become void or inoperative if the declaration made, or any part of it, should be found, in any respect, untrue.*

It is further alleged that the following statements, found in the declaration made, and upon which the policy is based, were false:

Germania Insurance Company of New York v. Rudwig, &c.

*First.* The plaintiff stated in the declaration that Gotthelf was then insured for $5,000 in the Ætna Life Insurance Company, which was untrue.

*Second.* That Gotthelf was born February 5, 1817, when, in fact, he was born the 5th of February, 1816.

*Third.* That Gotthelf's father died of old age (93 years old), when he died of nervous apoplexy at the age of 82 years.

*Fourth.* That Gotthelf's mother died of old age (72 years old), when she died at the age of 65 years of paralysis of the lungs.

It is alleged that all of these statements were untrue, and the defendants did not discover they were false until after the death of the assured.

A reply was filed to this answer, and also a rejoinder by the defendant. It is insisted that the denials contained in the reply of the facts alleged by way of defense in the answer are not sufficiently specific, and therefore the statements of the answer must be regarded as true. The reply denies that the declaration filed with the answer contains any untrue statement, and further alleges that all of the statements therein contained are fair and true answers to the questions asked, and then proceeds to deny specially each averment of the answer with reference to the particular statement said to be false. We think the reply made an issue, and placed the burden on the defendant of sustaining his answer by proof.

The third paragraph of the answer avers that the policy provided that if Gotthelf should visit, between the first day of July and November, without the consent of the defendant, those parts of the United States which lie south of

North Carolina, Tennessee, Arkansas, and Kansas, 'the policy should cease, and that, without its knowledge or consent, the said Gotthelf visited, between the 1st day of July and the 1st day of September, 1878, the town of Beachland, in Warren county, Mississippi, which place is south of the prohibited line, and there died of yellow fever on the 7th of September, 1878.

The appellees, for reply to this paragraph of the answer, admit that the assured Gotthelf removed to Mississippi in the year 1870; that this was done with the knowledge and consent of the company, and in consideration of said removal, the defendant required the appellee to pay, and he did pay, an extra premium of thirty dollars for two years, and *until he was notified by the defendant that no further extra premium would be required, and the regular premiums were accepted afterwards by the defendant in full of all claims upon said policy.*

To this the appellant rejoins, and admits that on the 19th of August, 1870, for an extra premium of thirty dollars, it gave the plaintiff a written permit that Gotthelf *might reside or travel* in Mississippi until, but not after, July 1st, 1871; and that on the 17th of August, 1871, for another extra premium of thirty dollars, it gave the plaintiff another written permit that Gotthelf might *reside* or travel in Mississippi until, but not after, July 1st, 1872; denies that it ever consented to any visit or change of residence after the limitation of the second permit, or that it accepted any premiums after July 1st, 1872, with any knowledge that Gotthelf resided, or was or had been, at any time since 1st of July, 1872, in the prohibited territory.

There was a surrejoinder filed to this rejoinder, in which the appellees deny that the defendant never accepted any pre-

mium after the 1st of July, 1872, *with any knowledge* that the said Gotthelf resided in Mississippi after July 1st, 1872, and denies that defendant did not know until after the death of Gotthelf that he had resided or traveled in Mississippi after the 1st of July, 1872; and the pleader then proceeds with other denials in the same manner. This certainly is bad pleading, and would be so held but for the reply, which sets up specifically the consent of the company to the removal, and its acceptance of the premium with a knowledge of that fact. The rejoinder, in fact, made the issue except as to the terms of the consent alleged to have been specially given. The condition upon which the consent was given for the years 1871 and 1872, as alleged by the appellant, are admitted as true.

While the denial that the company *had no knowledge* raises no issue, an averment that the company knew and consented to the removal is sufficient, and this averment is found in the reply traversed by the rejoinder. The surrejoinder may be regarded as out of the record, and the issue is formed, the appellees admitting the conditional consent alleged to have been given by the company in the years 1871 and 1872.

In determining the questions involved in this case, we will proceed to consider, first, the effect of the declaration by the assured of the existence of certain facts that, by the agreement of the parties, constitutes the basis of the contract evidenced by the policy.

There is proof conducing to show that Gotthelf was not insured in the Ætna Life Insurance Company at the date of the policy, the insurance in that company having expired some time previous to the date of the insurance with the appellant. It is also questionable whether the insured was born on the 5th of February, 1816, or the 5th of February,

1819. There is proof also tending to show that Gotthelf's, father died at the age of 82 years instead of 93 years old, and his mother died at the age of 65, and not 72 years old, as stated, and that his father died of nervous apoplexy, and his mother of paralysis of the lungs instead of old age, as stated in the declaration made. The policy of insurance provides that the insurance is made *in consideration of the representations made to them in the application for this policy,* and further provides "*if the declaration made by or for the assured, or any part thereof, forming part of this contract, and upon the faith of which this contract is made, shall be found in any respect untrue, the policy shall cease, and be null, void, and of no effect, and the company shall not be liable for the sum assured, or any part thereof.*"

There is no denial made by the appellees as to the character of the statements made in the application for the policy, and the principal question on this branch of the case made by counsel for the appellant is, that the court erred in failing to instruct the jury, or to adjudge as a matter of law, that the statements contained in the application were made material by the contract of insurance, and if not substantially true, although immaterial to the risk, the policy is avoided; in other words, if any of the statements made, however immaterial to the risk, were untrue, whether made with a fraudulent purpose, or from ignorance as to the truth or falsity of the statement, the appellees cannot recover. Several cases have been cited by counsel having a close analogy to the case before us, and a careful consideration of these, as well as other cases to which our attention has been called, go far in support of the position assumed by counsel. (Miles v. Connecticut Mutual Life Insurance Company, 3 Gray; Campbell v. New England Life Insurance

Company, 98 Mass.; Conover v. Mass. Ins. Co., 3 Dillon, 321; Anderson v. Fitzgerald, 4 House of Lords Cases.)

These cases all proceed upon the idea that the parties themselves have determined that all the minute questions and answers contained in such declarations shall become a part of the contract, and the only inquiry to be made by a court or jury is, whether the statements made are true or false. As to the statements made in regard to the age of the insured, and the respective ages of his father and mother, and the cause of their death, the jury has, by a special finding, said they were true, and this obviates the necessity of passing upon the errors assigned as to these findings, unless, as is insisted by counsel, the special findings are not sustained by the evidence. The deposition of one Eldod is taken in the Kingdom of Bavaria, who states that he is the keeper of the register of births and deaths of a Jewish congregation in Kleinerdlinger, kept and preserved by law, and from the register it appears that the father of the insured died at the age of 82, and his mother at the age of 65, one dying of nervous apoplexy, and the other with paralysis of the lungs, and further, that Gotthelf, the assured, was born in February, 1816, instead of February, 1819.

The son of Gotthelf states that it was the custom of the family to always celebrate the day of the birth of each member, and from this fact, and the statements then made by the father, he was sixty years of age at his death, and in this he is corroborated by another witness. The Bavarian register, without any evidence as to who made the record in regard to Gotthelf's family, or how the party making it derived the information it purports to give, either as to the ages of the different members of the family or the

diseases of which they died, might well be held by a court
or jury as insufficient to overthrow the statements made by
Gotthelf in order to convict him of falsehood, when he had
no motive to act otherwise than in the best of faith between
his creditors, who were having his life insured, and the com-
pany issuing this policy. These special findings were, in our
opinion, sustained by the evidence.

It is urged, however, that the assured Gotthelf was not
insured at the time of his application in the Ætna Insurance
Company in the sum of $5,000; and the jury having re-
turned a special finding to that effect, it avoided the policy.
It seems that Gotthelf had been insured in the Ætna Insur-
ance Company for $10,000, and that this insurance ceased
by reason of his failing to pay the premium in January,
1868. It is shown by an agent of an insurance company
that such a statement, if untrue, is not material to the risk,
and it is not contended that it would have controlled the
action of this company in making the contract if the fact
had been known.

We can well see how a concealment fraudulently made,
or a knowledge of like contracts with other companies in-
nocently withheld, should avoid the policy. The greater
the amount of insurance, either for the benefit of the family
of the assured or his creditors, the less would be the anxiety
of the assured with reference to their protection; and with
this feeling of security on his part, it might, in some instances,
at least, cause the assured to be less careful of his own health,
or more liable to indulge in habits calculated to shorten life;
but here there was nothing withheld from the company calcu-
lated to increase the risk. If, trusting in the fact that the
Ætna Insurance Company was vigilant through its medical
examiners in selecting the subject for insurance, it had the

benefit of such an examination of Gotthelf, so we find, at least from the evidence in the case, that no injury could have resulted from this oversight on the part of the assured at the time of making the application.    In the construction of insurance contracts, it is difficult to distinguish between a representation made, upon the truth of which the contract was entered into, and an express warranty as to the truth of the representation made.

It is very properly said that the contract of insurance is entered into by the company upon the faith of the representations made; but it is further insisted that, if made part of the contract, the representations then become express warranties.    If incidental to the contract, but upon the faith of which it is entered into, the representations, if false or untrue, must be material in order to avoid the policy; but when made a part of the contract, the representation made, whether material to the risk or not, if untrue, avoids the contract. So, in this case, if Gotthelf had made the statement that his father died at the age of eighty-two years, when, in fact, he died at the age of ninety-nine, this false or untrue statement would have rendered the contract null and void.

There is no doubt that an insurance company relies upon the truth of the representations made in either case, and equally certain that, if untrue and material to the risk, no inquiry will be directed for the purpose of determining whether the statement was fraudulently or innocently made.    The injury to the insurer is the same, but when no injury can possibly result to the company, where is the breach and what is the penalty?    It would certainly be no breach of warranty in a chattel if the quality was better than that warranted, unless the inferior article alone would conform to the wants of the purchaser; and if a breach, the damages

would be merely nominal; but in regard to insurance con-
tracts, that which neither increases or diminishes the risk,
and which could not have influenced the action of either
party in making the contract, is seized upon as a ground for
forfeiting the entire policy and depriving the assured not
only of all the benefits of the contract, but permits the
insurer to retain all the premiums paid.

While the contract of insurance may be peculiar to itself,
"it must be liberally construed in favor of the insured, so as
not to defeat, without a plain necessity, his claim to indem-
nity, which, in making the insurance, it was his object to
secure.   There is nothing about an agreement for insurance
intrinsically more sacred or inviolable than in an agreement
about any other subject-matter." (May on Insurance, pages
181 and 182.)

Such contracts are to be interpreted like other agree-
ments, and must be governed by the same rules, good faith
(says the same author) being especially required, as one of
the parties is necessarily less acquainted with the details of
the subject of the contract than the other.   In the declara-
tion made in the present case, it is said "that all the answers
and declarations made are true, and that we have not omitted
to communicate, nor *concealed any material circumstance*, and
we agree that this declaration shall be the basis of the con-
tract for insurance of the said life." Following the ordinary
rule in regard to the interpretation of contracts, and giving
to this declaration its full legal effect when inserted in the
contract, and it is evident the parties were looking to facts
that were *material to the risk*, and not to the minute state-
ments as to the precise age of the ancestors of the assured,
their nationality, or any other statement not calculated to
affect the risk in the slightest degree, and that could not

have possibly induced the company to enter into the con-
tract.   The application in this case constitutes a part of the
policy, and that means simply that the assured has not with-
held any material fact from the company, and when construed
with the entire contract, means nothing else.

   This court, in the case of Galbreath's adm'r v. The Arling-
ton Mutual Life Ins. Co., reported in 12 Bush, in discussing
a similar question, said: " Whether the representations alleged
to have been untrue are warranties, is not necessary in this
case to decide.   The first instruction quoted made the lia-
bility of the appellee to depend upon the truth of every
statement made by the assured which was enumerated in
that instruction, whether the risk was thereby increased or
not, and in this respect was erroneous.   The language is
not to be taken literally, but is to be construed with refer-
ence to the subject-matter, and the business to which it
relates.

   In the case of the Continental Ins. Co. v. Ware, decided
at the present term, the assured, in her application, which
was made the basis of, and formed a part of, the contract,
undertook and warranted that the building was of the value
of $3,000, when, in fact, as appeared from the proof, it was
worth a less sum.   This constituted one of the grounds of
defense by the company, and this court held that such a
representation, although made part of the contract, ought
not, when made in good faith, to amount to a warranty, or
affect the rights of the parties in any way; and further,
if a difference in the opinion of the insured with others as
to the value of the property insured will defeat the recovery,
it is creating a test difficult for a court or jury to determine,
and must render valueless nearly every policy similar in its
character in the hands of those who have insured.   Before

such a defense can prevail, it must appear that the party falsely, and with the purpose of deceiving the company or its agent, placed an over-valuation on the property insured. The case cited was where the contract of insurance had been executed since the passage of the act of February 4, 1874, providing "that all statements and descriptions in any application for or policy of insurance shall be deemed and held *representations and not warranties*, nor shall any misrepresentation, unless material or fraudulent, prevent a recovery on the policy."

This act, in our opinion, was but declaratory of the law as it then existed in this state, and we find no decision to the contrary, unless it is the case of the Farmers and Drovers' Insurance Company v. Curry, reported in 13th Bush. In that case the building burned was not occupied as stated in the application and policy. It was also encumbered by a vendor's lien, and had become vacant without notice to the company. These constituted the grounds of defense.

This court in that case said: "The evidence conduced to establish the facts upon which each of the propositions rests, and such being the case, the judgment below was reversed." That the statements were material to the risk could not have been successfully questioned; but the court proceeds in that case to discuss the effect of the act of 1874, now a part of the General Statutes, and says that statute would control *when the policy is silent as to the effect of the statements made; but when the parties undertake in the policy to declare the meaning and effect of its stipulations, they have the right to do so; and cannot be controlled by the statute.* The court was evidently considering the importance of the statements made in the policy to the party giving the indemnity at the time this utterance was made.

The very purpose of the statute was to bring such representations and warranties within its provisions, and to prevent the insured from losing his indemnity upon either a representation or warranty that was not fraudulent or material to the risk; and when parties have entered into an insurance contract since the adoption of this statute, they must be held as contracting with reference to the statutory provision, and, we might add, subject to a like rule, recognized by this court regardless of the statute, and therefore that portion of the opinion in the case of the Farmers and Drovers' Bank against Curry expressing a contrary view is overruled.

The supreme court held, in the case of the National Bank against Insurance Company, on a policy like this, that a representation as to value was not to be construed as a warranty.   (5 Otto, 673.)

Forfeitures are regarded by courts with but little favor, and while the non-payment of premiums or a representation of facts fraudulently or innocently made, if untrue and material to the risk, or such as would induce the insurer to enter into the contract, must prove fatal to the policy when minute and trivial questions are propounded and answered having no bearing or influence on the minds of those about entering into the contract, and not material to the risk, the parties cannot be affected by them.   An honest belief in the truth of the statement made, when not material to the risk, should not avoid a policy if the statement should prove to be untrue, and to adjudge that it works a forfeiture is contrary to the intent and meaning of the parties, and subversive of that rule of good faith and fair dealing that should enter into and form a part of every insurance contract.

The principal question, we think, in this case, arises out of the declaration and agreement made by the assured that Gotthelf would not reside or visit certain parts of the United States lying south of South Carolina, Tennessee, Arkansas, and Kansas, between the first days of July and November, without the consent of defendant. Gotthelf removed from Louisville to the city of Vicksburg, and his creditors, the appellees, upon the payment of an extra premium of thirty dollars, obtained the consent of the company (the appellant) that he might reside or travel in Mississippi up to July 1, 1871, and by the payment of a like extra premium obtained the appellant's consent that he might reside or travel in the same state up to July, 1872.

After that time, viz: July, 1872, no permit was asked or consent obtained from the company, and Gotthelf still continued to reside in or near Vicksburg until his death in September, 1878. The regular premium was paid each year from the date of the insurance until his death. It is apparent from the proof that the appellees knew, and if not, they must be presumed to have known, the terms of the policy, and that by Gotthelf's removal to Vicksburg without the consent of the appellant, the policy became void. It appears from the testimony that the appellees, after obtaining the written permits from the company, proposed to the agent of the company at Louisville to continue the payment of the extra premiums, and were informed by the agent that he would notify the company, and see that the policy was not forfeited. These suggestions were made time and again to the agent, the latter continuing to inform them that it was not necessary to make any additional payments, and with this understanding and the continued offer by the appellees to pay the extra premium, the agent con-

Germania Insurance Company of New York v. Rudwig, &c.

tinued to record the regular premiums, and to forward the same to the appellant at its office in New York from July, 1872, till Gotthelf's death in 1878. Knoefel, the agent of the company, says that he has no recollection of any such interviews or conversations had with the appellees as they detail, but he even fails to recollect that any written permits were obtained, and it is evident from the entire proof that the appellees offered to pay the extra premiums, and were informed by the agent that the company would not require any additional payment. It must be admitted that the appellees knew that it was necessary to obtain the assent of the company to the removal and continued residence of Gotthelf at Vicksburg, and that the agent had no power to modify or change the contract; but this case does not present the question as to the power of the agent to alter the legal rights of the parties, or to change the limitations placed upon the rights of the assured by the terms of the contract. This the agent had no power to do. The policy informed them the agent had no such power, and therefore the appellees continued to pay the premiums when they knew the policy by its terms was forfeited, on the assurance by the agent that the company would not require a greater sum. They concealed no fact from the agent, and having effected the insurance with him, confided in his statements, and paid the premiums as he required, and doubtless would have continued to do so but for Gotthelf's death.

In this case the agent received the premiums with the understanding and agreement between himself and the assured that this policy was to be binding on the company. They paid it upon no other condition, and Knoefel being the agent of the company *to receive premiums*, it was the duty of this general agent to have informed the company of what

had transpired between the assured and himself.  *The power to receive the premiums is expressly given the agent by the terms of the policy*, and if he received them after the act of removal had worked the forfeiture, what right had the company to receive the money?  They did receive it from July, 1872, until September, 1878, a period of six years, and now insist upon the forfeiture, with the right to retain the premiums paid by these appellees.  The company must either disclaim the act of the agent by returning the money thus improperly paid, or comply with the terms of its policy.  It has failed to do either after a full knowledge of all the facts, and, in our opinion, the judgment below was proper.  The case of King v. Harvey, reported in De Gex & Gordon's Reports, English Chancery, vol. 5, page 265, is very much like this.  There the policy was void if the assured went beyond the limits of Europe without license from the company.  Bennett, the assured, went to Canada, and was informed by Lockwood, the agent, that the policy would be good if the premiums were regularly paid.  They were paid for several years, and transmitted to the home office.  On the death of the assured, the company refusing to pay, it was held in the court of chancery that it was liable, even after the company had offered to repay the premiums, with interest, that had been paid after the assured left Europe.

On the policy in that case was this indorsement: " If the party upon whose life the insurance is granted shall go beyond the limits of Europe without the license of the directors, this policy shall become void, the insurance effected shall cease, and. the money paid to the society become forfeited to its use."

In the case of Insurance Company v. Wolff, reported in 5 Otto, the proof conduced to show that the agent was not

even apprised of the fact that the assured had gone into forbidden territory, and as soon as the company ascertained that fact, it directed a return of the premiums paid after the forfeiture, and while it is held in that case that the knowledge of the agent did not waive the forfeiture, it is evident, in the absence of convincing proof to the contrary, the court would have held, when the company had received the premium for years, the presumption must necessarily be indulged that it knew of removal, and, in accepting the premiums, waived the forfeiture. We are not prepared to say that the proof in this case would not authorize such a conclusion; but it is sufficient to say that the appellant is in court insisting on its right to retain the premiums paid from 1872 to 1878, and, by so doing, it has elected to abide by the acts of its agent. Considering, therefore, the facts in this branch of the case in the light presented by counsel for the appellant, the appellees are entitled to recover.

Judgment affirmed.