# Employers Liability Assurance Corporation v. Stanley Deposit Bank.

(Decided October 10, 1912.)

## Appeal from Daviess Circuit Court.

1. Insurance, Indemnity—Statements of Employer—What Required of Employer.—Where the employer, in making his answers to questions in an application for indemnity insurance, uses all the knowledge or information he has bearing on the subject inquired about, and believes in good faith what he says, and uses proper care to acquaint himself with the facts before answering, he has done all that should be required of him.

2. Insurance, Indemnity—Contract of Insurance—Notice.—While the contract of insurance required the bank upon discovery of any peculation on the part of its cashier to give immediate notice, notice by telegram fourteen days after the discovery was sufficient, in view of the fact that in the meantime the officials were trying to secure enough money and property from the cashier to make good the shortage, and did get all he had. Moreover, the question of whether the notice was reasonable was submitted to the jury under proper instructions.

3. Insurance, Indemnity—Notice—Instructions.—It was not error for the court to instruct the jury that the words "immediate notice" as used in the contract of insurance mean notice given as soon as practicable and within a reasonable time, nor was it error to state in an instruction that it is admitted in the pleadings that the cashier appropriated a certain sum of money, though the pleading states that the appropriation was with the consent of the officials of the bank.

4. Insurance, Indemnity—Due care of Officials of Bank—Question for Jury.—The question as to the care exercised by the officials of the bank in the examination of the books of the cashier was one for the jury, and this was presented to the jury under proper instructions.

5. Courts—Alleged Improper Remark by Court—Exception Not Taken When Made—Prejudicial Error.—While the jury may have heard a remark by the court prejudicial to appellant, the error cannot be considered, as an exception was not taken to it at the time, or at any time during the trial.

ROBT. E. WOODS, MILLER & TODD and T. L. EDELEN for appellant.

SWEENEY, ELLIS & SWEENEY and LITTLE & SLACK for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The judgment appealed from was rendered against appellant upon an indemnity bond which it had executed to appellee indemnifying it against loss occasioned by the infidelity of its cashier, Estill W. Neel. The maximum liability of appellant, as fixed in the bond, was $10,-

000 and judgment was rendered for $9,498. The bond in this case is similar to the bonds in the cases of Fidelity & Guaranty Co. v. Western Bank, 29 Ky. L. R., 639, and U. S. Fidelity & Guaranty Co. v. Citizens National Bank, 147 Ky., 285. To obtain the bond sued on in this case, appellee was required to and did, on February 16, 1904, make certain statements in answer to certain questions; and the following are those material to the issues, to-wit:

"4. Have you received a satisfactory character of him from his last employer? And have his duties while in your service always been performed in a faithful and satisfactory manner?

"Yes.

"6D. How often and to whom will your require him to render an account of cash received and pay the same over?

"Render statements to directors.

"6E. Are moneys to be paid into bank by applicant? If so, how often will the bank book be inspected and checked?

"Monthly.

"6H. How often will you balance his cash accounts, and how will you check their accuracy? Please explain fully.

"Every thirty days at meeting of directors; by cash on hand in other banks and notes discounted.

"6I. Will the balance in his hands, if any, be counted, and paid over, or how dealt with?

"Quarterly.

"6J. How often and by whom will cash, securities, stocks, etc., be compared and verified with accounts, vouchers and bank pass-book?

"Do.

"9. When were his accounts examined last and were they found correct in every respect?

"February 13, 1904."

The bond was renewed March 1, 1905, upon the following statement of appellee signed by its vice-president, James Hill, to-wit:

"This is to certify, on behalf of the employer referred to in the above policy, that Mr. Estill W. Neel, the employed, had been continuously in the service during the currency of this policy, and to the best of my knowledge and belief, has faithfully performed his duties and

rendered his accounts without default. Nothing derogatory to his character or ability has developed and I know of no reason why the renewal of the policy applied for should not be continued.

"His accounts were last examined or audited for the employer on Feb. 1, 1905; by directors and were found correct up to Feb. 1, 1905.

"STANLEY DEPOSIT BANK,

"By JAMES HILL, Vice-President."

Appellee was a new bank when the original bond was executed, having begun business on March 1, 1904, and Neel was its cashier from the beginning. Appellant claims in defense that Neel became a defaulter on February 8, 1904, which was before the application for the bond was made on February 1, 1904; that he also defaulted in February or March in the sum of $1,500; that he defaulted in the sum of $5,300 in June, 1905, and to the extent of $10,000 in December of the same year. The effect of appellant's claim is that all the answers above copied were untrue, and that it is not, therefore, liable on the bond. If this position were correct, it would result that the employer would be insuring his employe; would be insuring the insurer against the latter's liability which it was undertaking. If the employer, in making his answers, uses all the knowledge or information he has bearing on the subject inquired about, and believes in good faith what he says, and uses proper care to acquaint himself with the facts before answering, he has done all that should be required of him. The officials of the bank testified that they knew nothing of Neel's peculations until March 16, 1906; that they had used due care to ascertain the condition of his accounts; that they had checked his accounts monthly and quarterly, as stated in answer to some of the questions, and that, in so far as they could ascertain, his accounts were correct on February 13, 1904, and February 1, 1905. The capital stock of the bank was $15,000, and Neel agreed to take one-third of it. His account was charged with $500 on February 8, 1904, and this amount was used to pay a part of the agreed consideration for the stock. The $1,500 which it is charged he embezzled in February or March, was charged to his account, but it was used by him in paying for fixtures and supplies for the bank, and this was correct. It appears that those in charge

of the bank were country bank officials and had but little, if any, experience in banking, and they swore that they did not discover that the $500 and $1,500 items were on the individual account of Neel until March 16, 1906, and by an amendment of appellee, Neel's accounts for the first year were eliminated from consideration, so the only items in litigation are the peculations of the second year; one in June of $5,300 and one in December of $10,-000, and the bank officials testified that they did not discover these until March 16, 1906, although they used proper care in examining and investigating the accounts of Neel.

The contract sued on required appellee, upon the discovery of any peculation on the part of Neel, to give immediate notice thereof to appellant. As stated, the discovery was made on March 16, 1906, and notice was given by telegram and letter on March 30, 1906, fourteen days after the discovery, and appellant defended upon the ground that this was not such notice as required by the contract. In a few days after appellant received the notice it wrote appellee a letter denying its liability under the bond. Appellee's testimony shows that on the morning of March 16, 1906, its assistant cashier informed its president, who lived in the country, that there was something wrong with Neel's accounts and he began an investigation of his accounts and employed an expert for that purpose, but had not concluded it when the notice was sent to appellant. The testimony also shows that during the time between the discovery of the shortage and the time the notice was given, the bank officials were endeavoring to procure enough money and property from Neel to make his shortage good and did secure $5,802 which was all he had, except $1,750 and that was received by a bank in Owensboro. Neel had promised the officials to make the shortage good. The question as to whether appellee gave appellant reasonable notice, under the terms of the bond, was submitted to the jury under proper instructions. In the case of Fidelity & Guaranty Co. v. Western Bank, supra, the court, in considering this question, quoted with approval from Frost on Guaranty Insurance (section 104) the following:

"It is customary to provide in all policies of guaranty insurances that notice of loss shall be given to the insurer by the insured within a certain designated time. The time here referred to is usually controlled by the

use of such phrases as 'immediate notice,' 'notice forthwith,' 'as soon as possible,' 'as soon as practicable,' etc. These phrases have practically one and the same meaning, to-wit: That the insured shall, with all promptitude considering the probable amount of the loss, and the probability of the 'risks' endeavoring to escape, give notice to the insurer of the occurrence of the loss.''

That opinion also states that:

''Unless the lapse of time is so long as to be obviously a non-compliance with the contract, the question whether the notice was timely is one for the jury.''

With regard to notice, the case at bar is almost a fac-simile of the case quoted from, and in that case this court upheld the action of the lower court in submitting the question of notice to the jury. See also the case of U. S. Fidelity & Guaranty Co. v. Citizens Nat. Bank, supra.

Appellant also seeks a reversal because the court, during the trial, made an improper statement in the presence of the jury which it claims was prejudicial to it. The attorneys in the case were having some trouble about the introduction of evidence bearing on the giving of the immediate notice to appellant, and the court said to them:

''I have understood from the statements of counsel that that is according to the plaintiff's contention here, that they did not know anything was wrong with the accounts of Mr. Neel on March 15, 1906, and on April first they did notify them. I am of opinion to settle that business that that is within the meaning of this business immediately notifying. I think the courts have substantially so held.''

If this statement was heard by the jury it was very likely to prejudice appellant's defense. At the conclusion of the evidence, the court instructed the jury not to find for appellee unless immediate notice was given to appellant of the defalcation. And also gave the following instruction:

''The court further instructs the jury that the words 'immediate notice,' as used in the contract of insurance sued on herein and in these instructions, mean notice given as soon as practicable after the event and within a reasonable time, the covenant of the plaintiff in said contract being to act promptly and with dispatch in giving notice to defendant.''

The court did not err in giving this instruction, but if the jury heard the court make the remarks above copied, they had a right to believe that the court had settled the matter of notice for it, but there is only a presumption that the jury heard the remarks. Granting, however, that they did, we are not authorized to consider the error as there is nothing in the record showing that any exceptions were taken at the time it was made or any other time during the trial. (Branson v. Commonwealth, 92 Ky., 330; Manison's Admr. v. Lambert's Admr., 10 Bush, 295, and Bowler v. Lane, 3 Met., 312.)

Among others, the court gave the jury the following instruction:

"It is admitted in the pleadings that Estill W. Neel appropriated to his own use $15,300 of the funds of plaintiff bank during the period covered in the bond of indemnity sued on and if you shall believe from the evidence that said Neel by fraud or dishonesty so appropriated said funds of said bank without the knowledge or consent of its officials, then you should find in favor of plaintiff, and you will deduct from said $15,300 such sums as have been proven in evidence to have been paid to plaintiff bank by Neel upon his alleged shortage, but in no event are you authorized to find in favor of plaintiff in any sum exceeding $10,000, the amount named in the bond of indemnity sued on," &c.

Objection is made to that part of this instruction which stated that it is admitted in the pleadings that Estill W. Neel appropriated to his own use $15,300 of the funds of appellant. We have examined the pleadings carefully and are of the opinion that appellant's pleadings do admit that he appropriated that amount of the bank's funds, but allege that he did so with the knowledge and consent and under an agreement with the officials of the bank. The evidence shows, however, that Neel did appropriate two sums, to-wit: $5,300 in June, 1905, and $10,000 in December, 1905, which total $15,300, the amount named in the instruction, and there is no evidence in conflict with this, therefore, the court did not err in making the statement in the instruction referred to.

Appellant claims that it is also entitled to a reversal because the court erred in allowing C. M. Finn to testify as an expert when he did not qualify as such. Finn was not introduced as an expert. He testified that he was

not an expert bookkeeper, but had studied it while in school. Finn was county attorney at the time Neel defaulted and as such it was his duty and he did 'prosecute Neel for embezzlement, and in preparing the prosecution, Finn, with the aid of an expert bookkeeper, examined the books of the bank which were kept by Neel and which were introduced in evidence on the trial of this case; and Finn testified that with the aid of this expert he was able to learn how Neel appropriated the $5,300 in June and the $10,000 in December and how he attempted to cover it up, and he then took the books and showed the jury the different items entered on different pages, and showed how it was done. This, in our opinion, was in no sense the testimony of an expert. The witness only showed the different entries which had reference to the two sums embezzled.

The books of the bank are not before us, but, from the record, it is difficult to understand how the officials of the bank, if they used any sort of diligence and care, failed to discover the wrong doing of their cashier before March 16, 1906. They all testified, however, that they did use care and were diligent in examining the books and that they did not discover it before that time. This was a matter for the jury, and it decided in appellee's favor under proper instructions.

For these reasons, the judgment of the lower court is affirmed.