## American Bonding Company of Baltimore v. Ballard County Bank's Assignee, et al.

(Decided May 26, 1915.)

### Appeal from Ballard Circuit Court.

1. Insurance—Guaranty and Indemnity.—Becoming surety in the bond of an employee, executed to the employer, guaranteeing the fidelity of the employee, is a species of insurance, and the representations of the employer to secure such insurance are not warranties, and are not to be so construed.

2. Insurance—Representations to Obtain.—A representation, which is false, must, also, be material to avail as a defense against recovery upon the bond.

3. Insurance—Guaranty and Indemnity—Good Faith of Employer.— When an employer is called upon by the proposed insurer for information in regard to the employee, and the employer in good faith states all that he knows, and in good faith believes what he says, and exercises ordinary care to find out the truth of the things about which he states before making the representations, he has done all that can be required of him, and the fact that the representation turns out to be false will not avail as a defense to recovery upon the bond.

4. Insurance—False Representation of Employer.—If the employer, in the application, makes a false representation regarding a thing which he knows, or which by the exercise of ordinary care and diligence he ought to know, it will be fatal to the right of recovery upon the bond.

5. Insurance—Fidelity Insurance—Section 639, Kentucky Statutes.—
   When parties enter into a contract for fidelity insurance, they
   must be considered as contracting with reference to the require-
   ments of Section 639, Kentucky Statutes, and the adjudications of
   this court thereon.
6. Insurance—Fidelity Insurance—Notice by Employee of Loss.—
   When the bond covering the fidelity of an employee provides that
   the employer must discover the peculations of the employee, and
   present to the insurer an itemized statement of the losses, within
   six months after the liability under the bond ceases, this require-
   ment is binding and obligatory upon the employer.
7. Insurance—Construction of Contract.—The terms of a policy of
   insurance must be liberally construed in favor of the insured.
8. Insurance—Guaranty and Indemnity—Care officers of Bank Should
   Exercise.—The officers and directors of a bank, in the super-
   vision which they should exercise over their employees, to pre-
   vent default, must exercise that degree of care, which ordinarily
   prudent directors of a bank similarily situated would exercise
   under like or similar circumstances.

EATON & BOYD for appellant.

HENDRICK & NICHOLLS for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This is an appeal of the American Bonding Company
of Baltimore, Maryland, from a judgment rendered
against it in the Ballard Circuit Court, in favor of J.
M. Page, assignee of the Ballard County Bank, for the
sum of $2,642.59, on account of losses sustained by the
bank within the period extending from February 28th,
1910, to June 3rd, 1911, by the peculations of one W. F.
Purdy, Jr., who was the cashier of the bank, and which
acts amount to embezzlement or larceny from the bank.
The appellant was the surety of Purdy in a bond exe-
cuted to the bank covering the honesty of Purdy, and
undertaking to make good to the bank losses it should
sustain from Purdy's embezzling or stealing the assets
of the bank during said period. The appellant first be-
came surety of Purdy, in a bond to the bank, on the 28th
day of February, 1909, for the period of one year there-
after, and was renewed by certificates of renewal on
February 28th, 1910, and again on February 28th, 1911,
but on June 3rd, 1911, Purdy fled the country, and an
examination was then had of the affairs of the bank,
which developed the fact that during the years which
he had been cashier, since the year 1901, he had sub-

stantially embezzled and stolen in all about $14,000.00, $11,000.00 of which he had purloined previous to the execution of the bond on February 28th, 1910.

The appellant sought to avoid liability upon the bond on account of—First: Alleged false, fraudulent, and untrue statements made by the Ballard County Bank to induce the appellant to sign the original bond and the renewals of same.

Second: On account of alleged warranties, and the breach of certain conditions of the bonds, which appellant alleged were precedent to its liability on the bond and the renewals of it.

Third: That the bank had not properly exercised the necessary supervision over the cashier, as agreed in the application and bond, to prevent the theft of the assets of the bank.

Fourth: That $1,120.00 of the judgment recovered was embraced in an amended petition filed in the case more than a year after the 3rd day of June, 1911, and of which no itemized statement had been made and presented to the appellant, and demand made for its payment within six months after the liability upon the bond and the renewals had ceased.

When application was made by Purdy to appellant to become surety upon his bond to appellee, the appellant forwarded to appellee a printed form, containing questions to be answered by appellee, touching its knowledge of the habits, life, and character of Purdy, and the state of his accounts with the appellee. The record shows that such information was sought by appellant of several other persons, and among them a former employer of Purdy, and the information elicited from all these sources was very favorable to Purdy.

Among the questions propounded to appellee, and the answers thereto, were the following:

"Q. Has the applicant uniformly given satisfaction in his personal conduct and habits? A. Yes. Q. Have you any knowledge, or any information of, or are you aware of any habit of the applicant, or of any circumstances unfavorably affecting the risk to the surety on the bond applied for? If so, state particulars? A. No. Q. Is the applicant now, or has he been from any cause indebted to the bank or its officers? If so, give particulars, stating amount, how incurred, and how payment is secured? A. No. Q. Will the applicant have ac-

cess to the treasury of the bank? If so, under what restrictions? A. None. Q. In case of applicant handling cash or securities, how often will the same be examined and compared with the books, accounts and vouchers, and by whom? A. Monthly report to directors and annual examination by employed examiner. Q. Has applicant always faithfully, honestly, and punctually accounted to you for all moneys and property heretofore under his control or custody, as your employe? A. Yes. Q. Are applicant's accounts at this date in every respect correct, and proper securities, property, and funds on hand to balance his accounts? A. Yes.

"It is agreed that the above answers shall be warranties and form a part of, and be conditions precedent to the issuance, continuance, or any renewal of, or substitution for, the bond that may be issued by the American Bonding Company of Baltimore, in favor of the undersigned, upon the person above named."

This paper was dated as of the 19th day of February, 1909, and is signed by W. B. Nichols, president of the bank. On the 10th day of March, 1909, the bond was executed, but by its terms was to insure the appellee, against the dishonesty of its cashier, for the term commencing on February 28th, 1909, and ending on the 28th day of February, 1910. At the expiration of that period, the appellant gave appellee notice of that fact, and requested it to fill and sign the following certificate:

"To American Bonding Company of Baltimore:

"This is to certify, that since the issue of the above bond, Mr. W. F. Purdy, Jr., hereinafter called employee, has faithfully, honestly, and punctually accounted for all money and property in said employee's control or custody as my or our employee, has always had proper funds and securities on hand and is not now in default as such employee."

This was subscribed by appellee, by E. O. Sexton, President. Upon receipt of this certificate, the appellant issued and delivered to appellee a certificate of renewal of the bond, for the period of one year, thereafter. At the expiration of the last named period, upon receipt from appellee of another certificate, similar to the one above quoted, the appellant again issued and delivered to appellee a certificate of renewal of the bond, for the period from February 28th, 1911, until February 28th, 1912.

The bond, among other undertakings and conditions, contained the following:

"This bond is made, issued, and accepted upon the following conditions:

"First: That all statements made or which may at any time be made by the employer, or by any of his or its officers, in connection with this bond or any renewal hereof, are warranted by the employer to be true, that the employee has not been in arrears or in default in any position in the employer's service; that he has not, to the knowledge of the employer, or any of his or its officers, been in arrears or in default in any other position; * * * that the employer shall observe, or cause to be observed, all due and customary supervision over said employee for the prevention of default; that there shall be careful inspection of the accounts and books of said employee at least once in every twelve months, from the date of this bond, etc."

The appellant insists that the appellee procured it to execute the bond, and the renewals thereof, by false, fraudulent, and untrue statements, which were material to its proposed risk, in representations made by it, to the effect that its cashier was not then nor had theretofore been indebted to it, nor to its officers; that he had always faithfully, honestly, and punctually accounted for all moneys and property theretofore under his control or custody; and that his accounts at that date were correct, and proper securities, property, and funds on hand to balance his accounts; and that under the contract, by which appellant had made, these representations were warranted to be true by appellee, and for that reason were conditions precedent to its right of recovery upon the bond.

There is no doubt about the representations being false. The proof shows, without dispute, that when appellee signed and delivered to appellant the paper containing the representations, on the 19th day of February, 1909, Purdy was then a defaulter to the bank in a large sum. It is as undisputed, however, that the fact of his defalcation was, at that time, unknown to the bank or its officers. His habits, so far as known to any one, were good and moral. His home life was conducive to happiness. He apparently gave his time and attention, industriously, to the business of the bank.

He was, however, so skillful a manipulator of the books of the bank, and hid his peculations and concealed the false entries upon the books with such skill, that he successfully deceived an expert bank examiner on several occasions, and the State Bank Examiner upon as many as two occasions, when they made examinations of the bank and its books, and his method of conducting the bank.

The statement relied upon to defeat recovery upon the bond were statements made in an application for fidelity insurance, and the construction to be placed upon them is governed by a statute, in this State. The statute referred to is Section 639, Ky. Statutes, 1915, as follows:

"All statements or descriptions in any application for a policy of insurance shall be deemed and held representations and not warranties; nor shall any representation, unless material or fraudulent, prevent a recovery on the policy."

In Germania Insurance Co. v. Rudwig, 80 Ky., 233, this court held, that when parties enter into a contract of insurance, in this State, since the adoption of this statute, they must be held as contracting with reference to the statutory provision, and subject to a like rule recognized by the court. It must now be held, that such parties contract with reference to the construction of this statute, which has been placed upon it by the adjudications of this court. The statute very plainly says that the statements made in an application for insurance are not warranties, and are not to be construed as such. The provisions of this statute should, however, be applied to each contract according to the purpose of the contract.

This court held in the case of Germania Insurance Co. v. Rudwig, *supra,* that a representation, although false, would not render void an insurance policy granted upon it, unless the representation was material. Construing the above statute, as it applies, to a bond executed, insuring the fidelity of an employee, and with reference to the fact that a misrepresentation made by the employer to obtain the insurance similar to the facts of this case, in the case of the Fidelity & Guaranty Co. v. Western Bank, 29 R., 639, this court said:

"They should be applied to each contract, however, according to the purpose of the particular engagement.

The insurer, here, is guaranteeing the honesty and fidelity of a man, who is to be employed by the insured. The former takes the risk of his turning out faithless and entailing a loss on his employer. Before assuming the risk the insurer has the right to inform itself of the employee's past conduct, so that it may determine whether it can afford to guarantee his future conduct. It asked the employer for what information he may have upon that subject. It is entitled to a truthful answer. This does not imply, though, that the answer must be true. It may not be, in fact. If the employer, in making his answers, uses all the knowledge or information he has bearing on the subject inquired about, and if he believes in good faith what he says, and has endeavored in good faith and with proper care to acquaint himself with the facts before answering, that is all that is required of him. If it were otherwise, it would result that the employer would be insuring his employee; would be insuring the insurer against the latter's liability which it was undertaking. This was not within the contemplation of the contract. A construction that would make it so, would violate the spirit and letter of the expressed undertaking in the bond." U. S. Fidelity & Guaranty Co. v. Blackley, Hurst & Co., 25 R., 1271; Employers' Liability Insurance Co. v. Stanley Deposit Bank, 149 Ky., 735; U. S. Fidelity & Guaranty Co. v. Foster Deposit Bank, 148 Ky., 776; U. S. Fidelity & Guaranty Co. v. Shepherds Home Lodge No. 2, 163 Ky., 706; U. S. Fidelity & Guaranty Co. v. Citizens Bank of Monticello, 147 Ky., 285.

Upon the authority of the above cases, it seems that a bond executed to insure an employer against the dishonesty of his employee, cannot be avoided on account of a misrepresentation made by the employer in the application for the insurance, if the employer does not make a misrepresentation in regard to a fact which is within his knowledge or which ought to be within his knowledge, if he had exercised ordinary care to learn the truth about the matter. If he knowingly makes a false answer in regard to a matter material to the risk, or if he should make a false answer by reason of his negligence in not having used due diligence and precaution to learn the truth of the matter, it would be fatal to a recovery upon the bond. The statute, 639, *supra,* with its construction by this court must be considered to

have been within the contemplation of the parties, when making such a contract.

A well-known rule of construction applying to every case where a party takes an agreement prepared by another, and upon its faith incurs obligations or parts with his property, should have a construction given to the instrument favorable to him, and in accordance with the rule laid down by May upon Insurance, which says:

"No rule in the interpretation of a policy is more fully established, or more imperative, or controlling than that which declares in all cases it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to indemnity, which in making the insurance, it was his object to secure."

This court, in Fidelity & Casualty Co. of New York v. Hunt, 142 Ky., 25, said:

"The expression 'must be liberally construed in favor of the insured,' allows, and in fact necessitates, that the weaker reason be supplemented by a liberal allowance so as to, if it will, outweigh the better and more technical course. * * * The reason for the rule is that the insurer, with deliberation and care, has set down in its own language the conditions of its contract; if it is not unreasonably susceptible of a construction against the insurer, then it is likely that the assured understood it that way."

The president and directors of the appellee bank at the time of the execution of the bond, were all farmers, and the appellant could not expect them, as the representatives of a village bank in the country, to be generally experienced in bookkeeping, or in the best methods of examining books, to any very great extent. They, of course, should be held to that degree of care that ordinarily prudent directors and officers of a bank similarly situated would exercise under like or similar circumstances. U. S. Fidelity & Guaranty Co. v. Citizens National Bank of Monticello, supra. The evidence shows that Purdy was so skillful in manipulating the books of the bank, and so cunning in devising ways and means to conceal his peculations, that they were concealed from and not discovered by an expert bank examiner, who examined the bank on several occasions, and from the State's official bank examiner, who examined it upon two occasions, and both of whom reported that everything in the bank was in perfect order, and that the bank's

condition was good. Before the president of the bank signed the application for the bond in question, he secured a man, whom bank officials recommended to him to be an expert in the examination of the books of a bank, and of the affairs of a bank generally, and had him to make an examination, and after the examination was made, and he reported the bank in good condition, and everything in proper order, he signed the application. The certificate given by the president of the bank, upon which the appellant issued the first renewal certificate, was given by E. O. Sexton, who at that time was president of the bank, and who had spent two or three months in the bank as an assistant, and had examined the books to such an extent, that he could reasonably determine as to whether or not there was anything wrong in the conduct of the cashier, and who was himself a fairly good bookkeeper, and with several years' experience in the bookkeeping line. The certificate, upon which the second renewal certificate was given by the appellant, the president did not sign until the State's official examiner had made a complete examination of the bank, and had reported to him that everything was in proper condition, and the bank in good condition and no evidences to the contrary. There was nothing in the life, habits, or conduct of the cashier to arouse any suspicion, that he had been guilty of any wrong, during his connection with the office of cashier of the bank, and it appears from the facts above stated, as well as other evidence in the case, that the presidents of the bank exercised that degree of care which ordinarily prudent officers of a bank, under similar circumstances, would exercise. They stated under oath, that at the time they signed the representations, that they in good faith believed that they were stating nothing, except that which was true, and that they had no reason at the time to think or suspicion that their statements were untrue, and all the circumstances of the case corroborated them in the statements of their belief in the integrity of the cashier. It seems that the employers, in this case, in making their answers to the inquiries of appellant, used all the knowledge or information, which they had, bearing on the subject inquired about, and believed in good faith what they said, and had used reasonable diligence and care to acquaint themselves with the facts before answering. Under these circumstances, the answers

complained of by appellant will not avoid the bond in a case such as this, whatever may be the rule applying to a material misrepresentation not fraudulently made in another state of case.

Under the terms of the bond, the appellant's liability ceased upon it on the 3rd day of June, 1911, and the appellee undertook to make an itemized statement of its claim, duly swear to the same, and present it to the appellant within six months after such termination, and the bond further provided that the employer should have six months, after the termination of liability upon the original bond and upon each one of its renewals, within which to make a claim for, and file itemized proof of any losses occurring during the term of its operation. The court below refused to render judgment in favor of appellee for the loss it sustained by reason of the peculations of Purdy during the life of the original bond, which was the period from the 28th day of February, 1909, until the 28th day of February, 1910. No appeal was taken from the judgment of the court by the appellee, and it is unnecessary to discuss the correctness of that ruling. The court, however, gave a judgment in favor of appellee against appellant for the losses sustained by it from the 28th day of February, 1910, until the 3rd day of June, 1911, and which were discovered within six months after February 28th, 1910, and June 3, 1911, respectively, and demand made for same, and in this there seems to be no error.

The complaint made by appellant that the appellee did not exercise the usual and customary supervision over the conduct of Purdy, for the prevention of default upon his part, is not meritorious, as all was done in that regard by the appellee that was promised in the application or required in the bond.

It seems that on the 15th day of January, 1914, the appellee offered an amended petition in the case, and sought to recover of appellant various sums in money, amounting in all to $1,120.34, which had been discovered, as having been stolen from the bank by Purdy during the year 1911, but was not discovered until more than six months after the termination of appellant's liability upon the bond and its renewals. The filing of this pleading was objected to by the appellant, but its objection was overruled by the court, and judgment rendered against appellant for the amounts sought in it.

This court, as well as others, has held, that a bond such as the one sued upon in this case, which had a clause requiring the discovery of the losses to be made within six months after the termination of the obligation, and proof of it to be made during that time, that such is a reasonable and binding agreement, and unless complied with, the surety is released from liability. Ballard County Bank's Assignee v. U. S. Fidelity & Guaranty Co., 150 Ky., 240; DeJarnett v. Fidelity & Casualty Co., 98 Ky., 558; The American Surety Co. v. Pauley, 170 U. S., 133; Proctor Coal Co. v. U. S. Fidelity & Guaranty Co., 134 Fed., 434. Such requirement is not in contravention of the public policy of the State, because it has no mischievous tendency, and is rather an incentive to the officers of a bank in performing their duties to those who trust their funds with it. In rendering judgment against appellant for the sum of $1,120.34, set up and sought in the amended petition of January 15th, 1914, the court below was in error.

It is, therefore, adjudged that the judgment appealed from be reversed, and the cause remanded with directions to proceed in conformity with this opinion.