## McDermott v. Louisville & Nashville Railroad Company.

(Decided November 8, 1918.)

### Appeal from Jefferson Circuit Court (Common Pleas Division No. 3).

1. Carriers—Personal Injuries—Negligence—Burden of Proof.—A passenger injured by falling through a glass door on a train, and who relies for a recovery upon the negligence of the company in causing the train to make a sudden, unusual and unnecessary jerk which made him fall, has the burden of establishing the negligence of the company, and negligence of the company will not be presumed from the fact the passenger was injured.

2. Carriers—Personal Injuries—Instructions.—Where the plaintiff and his witnesses testify that the train made a sudden, unusual and unnecessary jerk, but the defendant introduces a number of witnesses who contradict the evidence given by plaintiff and his witnesses, and state that the train did not give a sudden, unusual and unnecessary jerk, and the court submits the question by proper instruction to the jury and it returns a verdict for the defendant and judgment is entered thereon, said judgment will not be disturbed by this court unless the verdict is palpably and flagrantly against the evidence.

3. Negligence—Intoxication as Contributory Negligence.—Voluntary intoxication is not per se contributory negligence, but it is a matter which may be considered along with other contributing causes which produce the injury of the plaintiff, in determining whether the plaintiff was guilty of such negligence as but for which his injury would not have occurred, and thus bar his recovery.

4. Negligence—Contributory Negligence—Prejudicial Error.—If there is any evidence that the plaintiff was guilty of negligence which contributed to his injury, it is proper for the trial court to give an instruction upon contributory negligence, and where the court gives an instruction upon contributory negligence which is in form and substance the same as one offered by the plaintiff, there is no prejudicial error.

MAT J. HOLT for appellant.

HELM & HELM and BENJAMIN D. WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The appellant, Robert F. McDermott, was a member of the National Guards which were sent by the government to the Mexican border in 1916. The returning troops left the border in October and were carried by a train of the appellee company by way of New Orleans, Mobile and

Atlanta, to the north. Fourteen passenger coaches, a baggage car and a box car made up the train, which was used exclusively for the carrying of these troops. Between the coaches the train was vestibuled and drinking water was placed in coolers therein. McDermott was a private and was cook for the colonel. On the journey and at some point near Mobile, Alabama, he went with other soldiers to the water cooler in the vestibule for the purpose of getting a drink of water. According to his testimony he had a glass of water in his hand and was in the act of raising it to his mouth when the train gave a sudden and unusual jerk which threw him against the glass door of the vestibule, his elbow breaking and passing through the glass fragments of which lacerated his arm, from which he bled profusely. The wound was rather a serious one. Army physicians and surgeons on the train were immediately summoned to attend McDermott. A number of stitches were taken in closing the wound and it was bound up. Some stimulants were administered to McDermott before the stitches were taken, and it appears from the evidence he was put under an anesthetic from which he did not emerge until the following morning. He was removed from the train at Atlanta and taken to McPherson Military Hospital, where he remained for several days, and was then carried to a base hospital, Governor's Island, New York, at which place he underwent treatment for several weeks. The injury occurred October 31, 1916, but at the time of the trial in June, 1917, at which McDermott was not present, the evidence shows that he had not fully regained the normal strength of his arm. The evidence is not entirely clear as to just how the accident happened, but it is admitted that while McDermott was standing in the vestibule, the train running at a rapid rate, his arm was thrust through the glass in the door and the injury inflicted. A number of soldier passengers on the train at the time say that the train gave a sudden and unusual lurch or jerk and that this precipitated McDermott through the door, causing his injury. Other persons upon the train say that no such jerk occurred, or at least none was felt by them. The trainmen, including the conductor, engineer and fireman, all say that there was no sudden jerk or movement of the train which was unusual or unnecessary; that the whole run from New Orleans to Mobile was made without a

single unusual or unnecessary jerk or jar; that there was but one stop on that run of four hours, covering one hundred and forty miles, and this at Pascagoula, for water, and the train arrived at Mobile only two minutes late on its schedule. The chief question involved in the trial was, whether the injury was occasioned by a sudden, unusual and unnecessary jerk of the train. If there was no such jerk, then there was no liability, and there was no liability even though there was a jerk or jar if the same was not unusual and unnecessary, because in the most skillful operation of passenger trains, such as the one in question, jerks and jars are not wholly unusual or entirely to be avoided.

The case was submitted to a jury upon two instructions, as follows:

"1. It was the duty of the defendant, the Louisville & Nashville Railroad Company, when it undertook to transport the plaintiff as a passenger, to exercise the highest degree of care to carry the plaintiff safely to his destination, and if you shall believe from the evidence in this case that on the occasion referred to, the agents of the defendant company controlling and operating its trains, failed to exercise that degree of care and by reason of such failure upon their part, or upon the part of any one or more of them, they, or either of them, caused the train upon which the plaintiff was riding as a passenger to stop with an unusual and unnecessary jerk in the movement of the train of sufficient violence to indicate a want of the highest degree of care in the operation of said train and that by reason of such negligence, if they or either of them were so negligent, the plaintiff was caused to be thrown against the glass of the vestibule door and he was thereby injured, the law is for the plaintiff and you should so find. But unless you shall so believe from the evidence, the law is for the defendant and the jury should so find.

"2. It was the duty of the plaintiff on the occasion in the evidence referred to, while riding on the defendant's train, to exercise ordinary care for his own safety, and if you believe from the evidence that on the occasion referred to, he failed to exercise that degree of care, and by reason of such failure upon his part, if he did so fail, he so far contributed to cause or bring about his injury, that but for such failure upon his part, he would

not have been injured, the law is for the defendant, and the jury should so find, although you may believe from the evidence that some one or more of the agents of the defendant company were also negligent.''

After argument by counsel the jury retired for deliberation, and shortly thereafter returned a verdict for the defendant company. The appellant, plaintiff below, complains chiefly of the action of the court in giving an instruction upon contributory negligence because, as he asserts, no evidence was introduced tending to support the pleading of the defendant on that subject and none that would warrant the giving if such an instruction. It is also earnestly insisted that the verdict is contrary to the weight of the evidence, and if the whole evidence be considered, the jury could not have arrived at its verdict except upon the idea that the plaintiff was guilty of contributory negligence. We cannot assent to this proposition, because the jury may have found from the evidence that there was no sudden, unusual or unnecessary jerk, and if it did arrive at such conclusion, from the evidence, it was its duty to have returned a verdict for the defendant company. The evidence on that point was conflicting and, therefore, it was proper to submit the question to the jury; and unless the finding of the jury was palpably and flagrantly against the evidence it is not within the province of this court to set it aside.

Evidence was introduced tending to show that McDermott at the time and before his injury was under the influence of intoxicating liquors to such an extent as to dull his sensibilities and render him less able to take care of himself and avoid injury. This is stoutly denied by McDermott and several of his witnesses. Certain it is, that McDermott had taken whiskey either shortly before or immediately after the injury, and if his explanation of how he came to have the smell thereof on his breath—that it was given to him by one of the attending physicians or one of his comrades in order to stimulate him after the wound had been inflicted and before the arrival of the Major Surgeon—is accepted, then he was not intoxicated at the time of the accident. These acts, however, were submitted to the jury by an instruction upon contributory negligence. While voluntary intoxication is not *per se* contributory negligence, it is a matter which may be considered along with facts which contribute to

the injury in determining whether the plaintiff was guilty of such negligence as but for which his injury would not have happened. While a common carrier of passengers for hire is required to exercise the highest degree of care for the safety of its passengers, it is not an ultimate insurer of safety. Before liability attaches the carrier must be guilty of a violation of duty; must be guilty of negligence which is the proximate cause of the injury. If in the operation of its trains there was no negligence and the train was carried along in the manner and with the skill usually employed by reasonably prudent persons engaged in operating passenger trains, and plaintiff was injured, he is not entitled to compensation. His recovery must depend upon his establishing facts which show a failure on the part of the carrier to exercise the highest degree of care for the safety of its passengers, or to be more specific, in the case at bar, he must have shown that his falling through the glass door resulted from the carrier negligently causing its train to give a sudden, unusual and unnecessary jerk. The negligence of the carrier must be established by proof of facts; it cannot be presumed. The mere fact that McDermott was injured is no proof that the carrier was negligent in the operation of its train. If he was intoxicated and voluntarily leaned against the glass door and his elbow was thereby forced through the glass, and the injury resulted, the carrier is not liable, nor is the carrier liable if, in the prudent operation of its train, the plaintiff was injured even by falling through a glass door, if there was no sudden, unusual or unnecessary jerk. This question was for the jury under the evidence. The rule is that an intoxicated passenger who becomes indifferent or reckless, and in consequence fails to exercise ordinary care to protect himself from danger, and is injured, will be denied a recovery, and he cannot rely upon intoxication as an excuse for failure to exercise care for his own safety. L. & N. R. R. Co. v. Payne, 104 S. W. 752; City of Covington v. Lee, 28 R. 492; I. C. R. Co. v. Proctor, 28 R. 598; L. & N. R. R. Co. v. Cummins, 111 Ky. 333.

Much space is occupied in appellant's brief criticising instructions given by the court to the jury The first instruction given by the court is almost identical with one offered by plaintiff, and appellant can not therefore complain of this instruction. If complaint was made of

this instruction we would nevertheless sustain it, because it fairly presents the law of the case, and is in form and in substance very similar to instructions often approved by this court in cases of this kind.

The instruction on contributory negligence is likewise one frequently adopted by trial courts in cases where the question of contributory negligence is to be submitted, and over and over again approved by this court. While the evidence upon the negligence of McDermott is slight, the court was nevertheless justified in giving an instruction upon contributory negligence, and this view of the case was entertained by plaintiff and his counsel at the time of the trial, for they offered an instruction upon contributory negligence which the court declined to give although in substance and in form the same as the one submitted by the court to the jury. It is a well established rule of this court to decline to reverse a judgment solely upon the complaint of a party who only assails an instruction given to the jury similar in form and substance to one offered by him upon the same subject. Speigle v. C. N. O. & T. P. Ry. Co., 170 Ky. 285; Gorman's Admr. v. Louisville Railway Company, 72 S. W. 760; Smith's Admrx. v. Middlesboro Electric Light Co., 165 Ky. 63; Lan v. Erlington Machine Works, 170 Ky. 382; L. & N. R. Co. v. Woodford and Ireland, 152 Ky. 398. It therefore appears that the question of fact was not only properly submitted to the jury by the trial court, but by instructions substantially the same in form and substance as those offered by appellant, and he will not now be heard to object to the action of the trial court.

No error appearing to the prejudice of appellant, the judgment is affirmed.